[892 NYS2d 377]

In the Matter of NEW YORK COMMITTEE FOR OCCUPATIONAL SAFETY AND HEALTH, Appellant, v MICHAEL BLOOMBERG, as Mayor of the City of New York, et al., Respondents.

First Department, January 7, 2010

### APPEARANCES OF COUNSEL

*Cary Kane, LLP*, New York City (*Joshua S.C. Parkhurst* and *Larry Cary* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Victoria Scalzo* and *Stephen J. McGrath* of counsel), for respondents.

### OPINION OF THE COURT

MAZZARELLI, J.P.

Petitioner New York Committee for Occupational Safety and Health (NYCOSH) is a not-for-profit corporation comprised of, among others, 175 local trade unions and various health and safety activists. Its stated mission is to ensure workplace safety for all workers in the state. In May 2007, NYCOSH served a Freedom of Information Law (FOIL) request on the office of the New York City Mayor. It sought all records transmitted in 2006 to the Mayor by city agencies pursuant to Administrative Code of the City of New York § 12-127 (c) (1) and (2) (also known as Local Law No. 41 of 2004). Section 12-127 (c) (1) provides that

"[e]ach agency shall keep a record of any workers'

compensation claim filed by an employee, the subject of which concerns an injury sustained in the course of duty while such employee was employed at such agency. Such record shall include, but not be limited to, the following data:

"(i) the name of the agency where such employee worked;

"(ii) such employee's title;

"(iii) the date such employee or the city filed such claim with the appropriate office of the state of New York, if any;

"(iv) the date the city began to make payment for such claim, or the date such claim was established by the appropriate state office and the date the city began to make payment for such claim pursuant to such establishment, if any;

"(v) the date such injury occurred;

"(vi) the location at which such injury occurred;

"(vii) the nature of such injury, including, but not limited to, the circumstances of such injury, the type or diagnosis of such injury and a description of how such injury occurred;

"(viii) the length of time such employee is unable to work due to such injury, if any; and

"(ix) a list of any expenses paid as a result of such claim, including, but not limited to, expenses relating to wage replacement, medical costs, administrative costs and any penalties."

Section 12-127 (c) (2) requires each agency to transmit the workers' compensation records required to be maintained by section 12-127 (c) (1) to the Mayor.

Administrative Code § 12-127 (c) (3) requires that the Mayor create an annual report based on the records he receives pursuant to section 12-127 (c) (2). The section requires the annual report to analyze the expenses paid by each agency in connection with each workers' compensation claim; list the specific workers' compensation claims for each agency and the City as a whole; list the specific sites where injuries occurred for each agency and for the City as a whole; and provide year-to-year comparisons of the compiled information.

In response to NYCOSH's request, the Mayor's office provided its 2006 annual report prepared pursuant to Administrative Code § 12-127 (c) (3). The Mayor's office did not, however, produce the requested information; that is, the raw data which the Mayor was required to use to prepare the report. NYCOSH took an administrative appeal from the Mayor's response. In denying it, the appeal officer wrote that the Mayor's office was "not in possession of any documents responsive to your request beyond" the annual report. However, the denial letter advised NYCOSH that the City's Law Department maintains records of workers' compensation claims on behalf of the Mayor and referred NYCOSH to the Law Department for additional information.

NYCOSH then served a FOIL request on the Law Department seeking the same documents as in the initial request to the Mayor's office. The Law Department denied the request, stating in a letter that it "does not maintain a comprehensive data base of the information described by the section of the Administrative Code cited in your letter nor is this agency otherwise in possession of such a record." NYCOSH appealed to the Law Department and was again denied relief. In the denial letter, the Law Department's appeals officer represented that the Department did not "receive or maintain a record that contains all of the information listed in [Administrative Code § 12-127 (c) (1)]" and that FOIL did not require it to "create a record that does not already exist." The letter further stated that it was the appeals officer's "understanding that there are fifteen thousand to sixteen thousand [workers' compensation] claims filed each year" and that information regarding such claims "is gathered into a litigation case file for each individual claim."

NYCOSH commenced this CPLR article 78 proceeding to require the Mayor's office and the Law Department to produce the documents requested in its two FOIL requests. It also sought its reasonable attorneys' fees.

Respondents moved to dismiss the petition. The Mayor's office asserted that it could not respond to the FOIL request beyond producing the annual report, because it had delegated the responsibility for collecting information and preparing the report to the Law Department. The Law Department submitted the affidavit of Youssef Sidhom, the Director of Administration for its Workers' Compensation Division. Sidhom stated that he was "aware of all of the records maintained by the [Workers'

Compensation Division] and the current maintenance of its electronic filing system." He stated that he

> "conducted a thorough, reasonable and diligent agency-wide search for responsive paper and electronic records and there is no one responsive record which contains the information [NYCOSH] seeks. Rather, as described below, the requested information is stored electronically in a database, or is otherwise found within individual case files and would be overly burdensome to produce."

Sidhom then recounted how workers' compensation claim information is received, stored and retrieved by the Law Department. He stated that of the approximately 16,000 claims received annually, 60% are submitted electronically. Those are "input in the City's workers' compensation computer system," which then "interfaces with certain City-wide computer systems, extracts certain data from those systems, and then downloads the desired information into the New York City Law Department Workers' Compensation Division's internal computer system, known as 'GenIRIS.' " Sidhom explained that "[t]he GenIRIS system is comprised of a database which houses ten separate units. In order to compile the requested information, special programs need to be designed and run to extract the information from each unit separately and consolidated into one report." Of the claims which are submitted in paper form, Sidhom asserted that the forms are first placed in a file prepared for each claimant, and then the relevant information is entered into the GenIRIS database.

Sidhom next discussed how the annual report is created. He stated that "[the] report is prepared using a series of complex programs and formulas, and time-consuming reviews designed to retrieve the required information from each of the ten separate units that comprise GenIRIS. This data is then compiled (with like-information being combined), sorted and formatted."

Finally, Sidhom explained what would have to be done to comply with NYCOSH's FOIL request. He stated that

> "new reports and commands would need to be designed with respect to each category of information. Indeed, as some of this information (such as length of time an employee misses from work and the date the City began to make payment for such claim) is stored in a different location other new

formulas would likely have to be written to extract the required data from each of GenIRIS's ten units, and then compiled, sorted and formatted. The completion of such a project would be a time-consuming effort and disruptive of the Workers' Compensation Division's operations . . .

"Thus, in order to comply with [NYCOSH's] FOIL [r]equest, Respondents would be required to review and photocopy documents from some 16,000 files, or prepare special reports, as described above, to extract the required information. Moreover . . . as the requested information is contained within workers' compensation files, disclosure of such information would constitute an unwarranted invasion of personal privacy and, thus, is exempt from disclosure under FOIL."

Supreme Court granted respondents' cross motion and dismissed the petition (18 Misc 3d 1143[A], 2008 NY Slip Op 50419[U]). In articulating the standard of review it was applying, the court stated that it was required to defer to the appeals officers' determinations as long as such determinations were not arbitrary and capricious. The court accepted respondents' submissions in support of their motion as providing a "rational basis" for their responses to NYCOSH's FOIL requests (*id.* at *7).

■ While typically an agency action is reviewed under an "arbitrary and capricious" standard, Supreme Court's application of that standard to the City's refusal to disclose the subject records was incorrect. When reviewing the denial of a FOIL request, a court must apply a far different rule. It is to presume that all records of a public agency are open to public inspection and copying, and must require the agency to bear the burden of showing that the records fall squarely within an exemption to disclosure (*see* Public Officers Law § 89 [5] [e]; *Matter of Markowitz v Serio*, 11 NY3d 43, 50-51 [2008]; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986]; *Matter of Bahnken v New York City Fire Dept.*, 17 AD3d 228, 229-230 [2005], *lv denied* 6 NY3d 701 [2005]).

The City does not dispute that the court applied the wrong standard of review. However, it argues that dismissal of the petition was nonetheless correct, because its denial of NYCOSH's FOIL request fit squarely within the exemption found in Public Officers Law § 87 (2) (a). That section permits an agency to

"deny access to records or portions thereof that . . . are specifically exempted from disclosure by state or federal statute." The statute which the City argued in turn exempted it from disclosing the records sought by NYCOSH is Workers' Compensation Law § 110-a (1) (a). That provides that "no workers' compensation record shall be disclosed, redisclosed, released, disseminated or otherwise published by an officer, member, employee or agent of the board to any other person." Further, the City argued that Workers' Compensation Law § 110-a (4) makes it "unlawful for any person who has obtained copies of board records or individually identifiable information from board records to disclose such information to any person who is not otherwise lawfully entitled to obtain these records."

NYCOSH claims that the City's reliance on Workers' Compensation Law § 110-a is misplaced. Its argument is based on the definition of the word "record" found in Workers' Compensation Law § 110-a (1) (b) (i), which provides that

> " 'record' means a claim file, a file regarding an injury or complaint for which no claim has been made, and/or any records *maintained by the board* in electronic databases in which individual claimants or workers are identifiable, or any other information relating to any person who has heretofore or hereafter reported an injury or filed a claim for workers' compensation benefits, including a copy or oral description of a record *which is or was in the possession or custody of the board, its officers, members, employees or agents*" (emphasis added).

Thus, NYCOSH argues that, because Workers' Compensation Law § 110-a (1) (b) (i) ascribes such a narrow definition to the term "records," the City was required to establish that what it sought pursuant to its FOIL request consisted exclusively of documents that were at some point in the possession of the Workers' Compensation Board. NYCOSH points out that, in contrast to this limited definition, FOIL broadly defines a "record" as

> "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer

tapes or discs, rules, regulations or codes" (Public Officers Law § 86 [4]).

We agree that, because it did not demonstrate that the records sought by NYCOSH were at some point in the possession of the Workers' Compensation Board, the City failed to carry its burden of establishing that its decision to deny NYCOSH's FOIL request was supported by a specific statutory exemption, as Public Officers Law § 87 (2) (a) requires (*see Matter of Konigsberg v Coughlin*, 68 NY2d 245, 251 [1986]). However, this does not mean that in responding to NYCOSH's request the City must divulge the personal information of workers' compensation claimants. Indeed, FOIL broadly protects the dissemination of records that "if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article" (Public Officers Law § 87 [2] [b]). FOIL expressly defines such records as including "information of a personal nature contained in a workers' compensation record" (Public Officers Law § 89 [2] [b] [vi]).

The City does not rely on the "personal privacy" protection of Public Officers Law § 87 (2) (b). However, for us to simply order the City to respond to NYCOSH's FOIL request without regard to the "personal privacy" provision embodied in FOIL would be to contravene the express intent of the Legislature that personal information related to workers' compensation claimants not be disclosed to the public. Nevertheless, the shield provided by Public Officers Law § 87 (2) (b) is not absolute, as is that provided by section 87 (2) (a). In other words, were we to find that the records sought by NYCOSH were covered by Workers' Compensation Law § 110-a, the City would have no obligation to respond whatsoever. However, the "personal privacy" exemption is qualified by Public Officers Law § 89 (2) (c) (i), which provides that "disclosure shall not be construed to constitute an unwarranted invasion of personal privacy . . . when identifying details are deleted." Accordingly, the City, in responding to the FOIL request, should redact the documents so as to preserve the privacy of any claimants who may be identified therein.

The City contends that, even if it is not statutorily exempt from responding to NYCOSH's FOIL request, it is nevertheless excused from doing so because identifying the records sought, and then reproducing and redacting them, would constitute an unreasonable burden. The City argues that NYCOSH has not reasonably described the documents it seeks. However, Local

Law 41 specifically delineates the material which city agencies are required to maintain and turn over to the Mayor's office. It is these documents, reflecting the data itemized in Local Law 41, which NYCOSH has requested.

The City also asserts that responding to the request is not feasible. First, it contends that to retrieve records which are stored electronically it must create new software. It claims that it is not required to do so, citing Public Officers Law § 89 (3). That section provides, in pertinent part, that "[n]othing in [FOIL] shall be construed to require any entity to prepare any record not possessed or maintained by such entity" (§ 89 [3] [a]). NYCOSH counters by citing the amendment to that section enacted in August 2008. The amendment provides that "[a]ny programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person . . . shall not be deemed to be the preparation or creation of a new record" (L 2008, ch 223, § 6). The City argues that the amendment does not apply to this case, because it was enacted after NYCOSH made the FOIL request at issue. However, the amendment was intended to codify existing case law. Prior to the change, courts had for many years stressed that, in the absence of burden, agencies were required to honor requests to produce responsive information in electronic media (see e.g. *Matter of Brownstone Publs. v New York City Dept. of Bldgs.*, 166 AD2d 294 [1990]). The legislative history of the amendment makes clear that the Legislature sought only to clarify and confirm such decisions. Accordingly, NYCOSH, to the extent it even needs to rely on the amendment, is entitled to do so.

The question then becomes whether the computer manipulation which the City claims is necessary to retrieve the documents constitutes "[a] simple manipulation of the computer necessary to transfer existing records" (*Matter of Data Tree, LLC v Romaine,* 9 NY3d 454, 465 [2007]), or whether it constitutes creation of a new document. *Data Tree,* the holding of which is reflected in the amendment to Public Officers Law § 89 (3), instructs that the former does not excuse responding to a FOIL request, while the latter does (*id.* at 465-466). On this record, it is not possible to conclude whether requiring the City to retrieve and produce the computerized records would be a "simple manipulation" or a creation of a new document. Mr. Sidhom, who does not purport to have any background in computer programming and does not explain the basis of his knowl-

edge of how the computer system operates, ambiguously states in his affidavit that the City must create new "commands" and "formulas." However, it is unclear whether those things fall within the realm of running programs within the existing software, or creating new software which would not otherwise exist but for the FOIL request. If the former, and the documents can be retrieved with "reasonable effort," the City is required to produce them (*Data Tree*, 9 NY3d at 464). A hearing is necessary to determine precisely what would be entailed were the City to attempt to retrieve the requested documents from electronic databases.

Further, the City claims that any effort to respond to NYCOSH's request will tax city resources. With respect to records which are maintained in hard copy, Mr. Sidhom maintains in his affidavit that the City would have to review each workers' compensation claimant's file and photocopy relevant documents. He never says that the City lacks the staff or resources to complete such a project; he merely states that it "would be a time-consuming effort and disruptive of the Workers' Compensation Division's operations." Such "naked" allegations of burdensomeness are normally insufficient to "evade the broad disclosure provisions" of FOIL (*Konigsberg*, 68 NY2d at 249). Nevertheless, this case presents a situation where the volume of records is undisputedly large, and those records not only need to be retrieved and reproduced from a wide variety of sources, but redacted as well. Accordingly, the hearing ordered herein should also encompass whether an undue burden would be created by requiring the City to respond to NYCOSH's request.

We have considered petitioner's additional contentions, including its request for attorneys' fees, and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Eileen A. Rakower, J.), entered February 28, 2008, which denied the petition brought pursuant to CPLR article 78 challenging the denial by respondents of petitioner's Freedom of Information Law request for certain documents, and granted respondents' cross motion to dismiss the proceeding, should be modified, on the law, the proceeding reinstated, and the petition granted to the extent of remanding to Supreme Court for a hearing as to whether respondents must produce any records that are electronically stored, and as to whether producing responsive records that are maintained in hard copy would place an undue burden on respondents, and otherwise affirmed, without costs.

FRIEDMAN, CATTERSON, RENWICK and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, New York County, entered February 28, 2008, modified, on the law, the petition granted to the extent of remanding to Supreme Court for a hearing as to whether respondents must produce any records that are electronically stored, and as to whether producing responsive records that are maintained in hard copy would place an undue burden on respondents, and otherwise affirmed, without costs.