In a proceeding pursuant to CFLR article 78, inter alia, to review a determination of Terry D. Grosselfinger, the Rockland County Records Access Appeals Officer, dated November 16, 2010, which, without a hearing, confirmed determinations, in effect, of Rockland County Executive C. Scott Vanderhoef and the County of Rockland dated July 30, 2010, August 12, 2010, September 20, 2010, September 24, 2010, and September 30, 2010, respectively, which, upon granting the petitioner’s requests for the disclosure of public records pursuant to the Freedom of Information Law (Fublic Officers Law § 84 et seq.), dated June 25, 2010, July 15, 2010, July 16, 2010, September 2, 2010, and September 13, 2010, respectively, conditioned that disclosure on the petitioner’s prepayment of certain estimated costs, the petitioner appeals from so much of an order and judgment (one paper) of the Supreme Court, Rockland County (Kelly, *1124 J.), dated February 4, 2011, as, without a trial, denied the petition and, in effect, dismissed the proceeding.
Ordered that the order and judgment is reversed insofar as appealed from, on the law, with costs, the petition is reinstated, and the matter is remitted to the Supreme Court, Rockland County, for further proceedings consistent herewith.
The petitioner in this case submitted numerous voluminous requests to the County of Rockland for disclosure of public records pursuant to the Freedom of Information Law (Public Officers Law § 84 et seq. [hereinafter FOIL]). These requests were made in a series of email messages sent over the course of four months. The County received as many as eight separate emails in a single day, and each email contained a multitude of separate requests for information.
For example, one email requested, among other things, records relating to the use, by 33 enumerated county officials and employees, of “any and all internet service, telephone service, mobile phone service, blackberry service, or other communications or search device” over an 18-month period. The petitioner requested that the records show “browse time by user and category” and “site categorization details.” A later email included a similar request for a different 18-month period. Still other emails contained requests for all records “pertaining to usage of the County’s computer system to search for, access, or download materials from internet websites using any or all of [certain enumerated search terms].”
In yet another email, the petitioner requested, among other things, all records maintained by the County of Rockland “pertaining to any person who was an employee or officer of the County of Rockland at any time on or after July 7, 1998.” The petitioner also sought “[a]ll records pertaining to any action at law or in equity . . . filed at any time on or after July 7, 1998 by or against [certain listed County employees or officers] in any court.” The petitioner requested all court documents, including pleadings, motions, memoranda, orders, transcripts, affidavits, exhibits, correspondence (including emails), and stipulations or settlements.
The County responded to the petitioner’s requests in a series of emails from the Records Access Officer for Rockland County (hereinafter the Access Officer), which attempted to describe the steps that would have to be undertaken in order to comply with each of the petitioner’s requests. The County was unable to quantify the magnitude of some of the requested information, but estimated that some individual requests would necessitate the production of tens of thousands of pages of docu *1125 merits. Given the breadth of the requests and the time intervals at issue, responsive documents were located at various public and private offices and in various public and private storage facilities which used a variety of paper and electronic filing and indexing systems. The County estimated that compliance with the petitioner’s numerous requests would necessitate thousands of hours of employee time. The County explained that multiple requests were so voluminous that they would create “an enormous administrative burden” that would “interfere with . . . day-to-day operations.”
The County granted the requests, but conditioned disclosure upon the prepayment of certain estimated costs that the County anticipated that it would incur in providing the requested materials. These estimated costs included, among other things, sums to cover the hourly salaries of county employees who would be involved in complying with the petitioner’s request. The County ultimately required the petitioner to make various payments ranging from $239.89 to $156,112.00, to cover the estimated costs associated with producing the requested documents.
The petitioner appealed these determinations to Terry D. Grosselfinger, the Records Access Appeals Officer in Rockland County (hereinafter the Appeals Officer). The Appeals Officer stated that he would give the County “the benefit of the doubt,” and assume that the estimated costs were made in good faith. The Appeals Officer concluded that the estimated costs were permissible, and that the County could withhold the records until the estimated costs were paid.
The petitioner commenced this proceeding in the Supreme Court seeking, among other things, to review the determination of the Appeals Officer and to compel the County to comply with FOIL, to prohibit the requirement that he pay the estimated costs, and to desist from engaging in practices designed to impair his access to the requested records. The Supreme Court, without holding a trial, denied the petition and, in effect, dismissed the proceeding. The petitioner appeals, and we reverse the order and judgment insofar as appealed from.
The Legislature has declared that “government is the public’s business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article” (Public Officers Law § 84; see Matter of Doolan v Board of Coop. Educ. Servs., 2d Supervisory Dist. of Suffolk County, 48 NY2d 341, 347 [1979]). The term “[r]ecord” is defined to mean “any information kept, held, filed, produced or reproduced by, with or *1126 for an agency ... in any physical form whatsoever . . . [including] papers [and] computer tapes or discs” (Public Officers Law § 86 [4]). With limited exceptions, FOIL does not “require any entity to prepare any record not possessed or maintained by such entity” (Public Officers Law § 89 [3] [a]; see Matter of Locator Serus. Group, Ltd. v Suffolk County Comptroller, 40 AD3d 760, 761 [2007]).
Accordingly, courts have recognized that agencies were not required to compile or reorganize information into new records that were not otherwise maintained during the course of their operations (see Matter of Gabriels v Curiale, 216 AD2d 850, 851 [1995]; Matter of White v Regan, 171 AD2d 197, 201 [1991]; Matter of Guerrier v Hernandez-Cuebas, 165 AD2d 218, 220 [1991]; Matter of Wattenmaker v New York State Employees’ Retirement Sys., 95 AD2d 910, 910 [1983]; Matter of Gannett Co. v James, 86 AD2d 744, 746 [1982]; Matter of Gannett Co. v County of Monroe, 59 AD2d 309, 313 [1977]; cf. Matter of Locator Servs. Group, Ltd. v Suffolk County Comptroller, 40 AD3d at 761). As agencies progressively moved to maintain more and more information in electronic formats, however, the line between locating and retrieving an electronic record and creating an entirely new record comprising information maintained by the agency became increasingly blurred.
The Court of Appeals addressed this issue in its 2007 decision in Matter of Data Tree, LLC v Romaine (9 NY3d 454 [2007]). In that case, the Court stated that “if [agency] records are maintained electronically . . . and are retrievable with reasonable effort, that agency is required to disclose the information” (id. at 464). The Court reasoned that, “[i]n such a situation, the agency is merely retrieving the electronic data that it has already compiled and copying it onto another electronic medium” (id. at 464-465). “A simple manipulation of the computer necessary to transfer existing records should not, if it does not involve significant time or expense, be treated as creation of a new document” (id. at 465).
In Matter of Data Tree, LLC v Romaine, the parties submitted evidence as to how the requested information was stored on the agency’s computer system and what efforts would need to be undertaken in order to provide it to the requesting party (see id. at 466). In light of the conflicting evidence, the Court ultimately concluded that there were “questions of fact ... as to whether disclosure may be accomplished by merely retrieving information already maintained electronically by the [agency] or whether complying with [the FOIL] request would require creating a new record” (id.).
*1127 In the year after Matter of Data Tree was decided, the Legislature amended Public Officers Law (see L 2008, ch 223, §6). As relevant here, the Legislature added provisions which stated that “[w]hen an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so” (Public Officers Law § 89 [3] [a], as amended by L 2008, ch 223, § 6). “Any programming necessary to retrieve a record maintained in a computer storage system and to transfer that record to the medium requested by a person or to allow the transferred record to be read or printed shall not be deemed to be the preparation or creation of a new record” (id.).
Furthermore, the 2008 amendments added language which prohibited an agency from denying a request because it was too voluminous or burdensome if the request could be satisfied by engaging an outside service (see Public Officers Law § 89 [3] [a]). The statute permitted an agency to recover the costs of engaging an outside service as provided in section 87 (1) (c) of the Public Officers Law (see Public Officers Law § 89 [3] [a]).
Public Officers Law § 87 sets limits on the costs which an agency may charge those who have requested records: “fees for copies of records . . . shall not exceed twenty-five cents per photocopy not in excess of nine inches by fourteen inches, or the actual cost of reproducing any other record” (Public Officers Law § 87 [1] [b] [iii]). Section 87 (1) (c) of the Public Officers Law defines the term “actual cost.” Under that provision, an agency may only recover the “actual cost” of reproducing the record, including “an amount equal to the hourly salary attributed to the lowest paid agency employee who has the necessary skill required to prepare a copy of the requested record” (Public Officers Law § 87 [1] [c] [i]). However, the statute provides that “preparing a copy shall not include search time or administrative costs, and no fee shall be charged unless at least two hours of agency employee time is needed to prepare a copy of the requested record” (Public Officers Law § 87 [1] [c] [iv]).
In addition, an agency may recover “the actual cost of the storage devices or media provided to the person making the request in complying with such request” (Public Officers Law § 87 [1] [c] [ii]). It may also recover “the actual cost to the agency of engaging an outside professional service to prepare a copy of a record, but only when an agency’s information technology equipment is inadequate to prepare a copy, if such service is used to prepare the copy” (Public Officers Law § 87 [1] [c] [iii]).
The sponsors of the 2008 amendments, in memoranda to the Governor, both portrayed the amendments as balanced, in that *1128 they expanded the duties of agencies in disclosing records maintained on computer systems, while permitting the agencies to recoup their costs: “This legislation makes it clear that public agencies should provide the type of copies the public requests when it can reasonably do so and that public agencies have the right to recover their actual costs in providing such copies” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 223 at 9; Assembly Introducer Mem in Support, Bill Jacket, L 2008, ch 223 at 12).
The Committee on Open Government, the agency responsible for oversight and advice with regard to FOIL, opined that the amendments would be “groundbreaking,” and that they “would, for the first time, authorize agencies to determine and assess a fee to be charged on the basis of an [agency] employee’s time” (Letter from St Comm Open Govt, July 3, 2008 at 18-19, Bill Jacket, L 2008, ch 223). It interpreted the amendments to provide that “in those instances in which substantial time is needed to prepare a copy, at least two hours of an employee’s time, an agency could charge a fee based on the cost of the storage medium used, as well the hourly salary of the lowest paid employee who has the skill needed to do so” (id).
The views of the Committee on Open Government are reflected in the regulations it drafted in 2009 (see 21 NYCRR 1401.8). These regulations provide that “[w]hen an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort . . . the agency shall be required to retrieve or extract such record or data electronically” (21 NYCRR 1401.8 [d]). “In such case, the agency may charge a fee in accordance with [21 NYCRR 1401.8 (c) (i) and (ii)]” (id). That section tracks the language of the statute which permits an agency to charge “an amount equal to the hourly salary attributed to the lowest paid employee who has the necessary skill required to prepare a copy of the requested record” (21 NYCRR 1401.8 [c] [i]; cf Public Officers Law § 87 [1] [c] [i]).
Here, the County granted the petitioner’s requests, but conditioned disclosure upon the prepayment of certain estimated costs that the County anticipated that it would incur in providing the requested materials. These costs were based on the County’s interpretation of those FOIL provisions which authorize it to recoup specified costs, including employee time, in the form of fees charged to the requesting party.
As an initial matter, the Appeals Officer’s determination upholding the County’s imposition of certain fees evinces a misapprehension as to the appropriate burden of proof. His deter *1129 mination was based, in part, on the conclusion that the County was entitled to “the benefit of the doubt” and that his role in reviewing the County’s determination was properly discharged by “assuming [the County] provided good faith estimates.”
However, “the burden of proof rests solely with the [agency] to justify the denial of access to the requested records” (Matter of Data Tree, LLC v Romaine, 9 NY3d at 463; see Matter of Markowitz v Serio, 11 NY3d 43, 50 [2008]). This burden must be met “in more than just a plausible fashion” (Matter of Data Tree, LLC v Romaine, 9 NY3d at 462 [internal quotation marks omitted]; see Matter of West Harlem Bus. Group v Empire State Dev. Corp., 13 NY3d 882, 885 [2009]; Matter of Konigsberg v Coughlin, 68 NY2d 245, 249 [1986]). Where, as here, an agency conditions disclosure upon the prepayment of costs or refuses to disclose records except upon prepayment of costs, it has the burden of “articulating a particularized and specific justification” for the imposition of those fees (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]; cf. Matter of Data Tree, LLC v Romaine, 9 NY3d at 462-463; Matter of Verizon N.Y., Inc. v Mills, 60 AD3d 958, 959 [2009]). Specifically, the agency must demonstrate that the fees to be imposed are authorized by the cost provisions of FOIL (see Public Officers Law § 87 [1] [c]). If an agency imposes fees which are not authorized by FOIL, the determination requiring the prepayment of such fees must be deemed to have been “affected by an error of law or . . . arbitrary and capricious” (CPLR 7803 [3]).
In this case, the only evidence in the record justifying the imposition of costs was the email correspondence from the Access Officer sent in response to the petitioner’s requests. Many of the fees outlined in those emails appear to be based on costs which may properly be recouped by the County pursuant to the cost provisions of FOIL. For example, charging the petitioner 250 for each photocopy of a paper record which is not maintained in an electronic format is expressly authorized by FOIL (see Public Officers Law § 87 [1] [b] [iii]). Furthermore, the Access Officer’s description of the fees indicated that some were properly based upon employee time needed to retrieve or extract records or data from electronic databases (see 21 NYCRR 1401.8 Ed]).
However, the Supreme Court nevertheless erred in summarily denying the petition since the Access Officer’s emails were insufficient to satisfy the County’s burden of demonstrating that each and every cost it sought to impose was authorized by the cost provisions of FOIL. The County attempted to justify certain *1130 fees by the general assertion that such fees were charged for the time that County employees would be required to spend in the “preparation” of records for reproduction. Although an agency may, in certain circumstances, recover costs associated with the time its employees must expend in order to “prepare a copy of [a] requested record” (Public Officers Law § 87 [1] [c] [i]), the conclusory explanation that a fee has been charged for the “preparation” of a document is alone insufficient to discharge the County’s burden of “articulating a particularized and specific justification” for the imposition of that fee (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566; cf. Matter of Data Tree, LLC v Romaine, 9 NY3d at 462-463; Matter of Verizon N.Y., Inc. v Mills, 60 AD3d at 959; see generally Public Officers Law § 87 [1] [c]).
The Access Officer’s emails indicate that some of this cost of “preparation” of records included costs associated with locating physical copies of certificates and other paper documents within archives or other filing systems. In advisory opinions issued after the 2008 Amendments, the Committee on Open Government expressed the view that, although “an agency may charge for employee time spent extracting or segregating data from an electronic database” (Comm on Open Govt FOIL-AO-17423 [2008]), FOIL does not permit an agency to charge for employee time spent searching for paper documents (see Comm on Open Govt FOIL-AO-18127 [2010]). Although the advisory opinions issued by the Committee on Open Government are not binding on the courts (see Matter of Seltzer v New York State Democratic Comm., 293 AD2d 172, 175 [2002]), “[a]n agency’s interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational” (Matter of Rodriguez v Perales, 86 NY2d 361, 367 [1995]; see Matter of Carver v State of New York, 87 AD3d 25, 33 [2011]; Seenaraine v Securitas Sec. Servs. USA, Inc., 37 AD3d 700, 701-702 [2007]). The conclusion of the Committee on Open Government that FOIL does not permit an agency to charge for employee time spent searching for paper documents is not unreasonable or irrational, given the provision of the statute which provides that “preparing a copy shall not include search time or administrative costs” (Public Officers Law § 87 [1] [c] [iv]).
The Access Officer’s emails indicate that the petitioner may have been improperly charged for the time it would take county employees to search for paper documents, as those emails make reference to time spent retrieving “32,400 pages that would need to be located in the Archives,” the retrieval of “files [that] would have to be located,” “a manual search of numerous files *1131 at the Department of Personnel,” and the retrieval of “the hard copy of each employee packet.” The Access Officer’s emails also indicated that, even where electronic copies were maintained, it would be necessary to check the accuracy of those copies by comparing them with hard copies and, thus, the County charged the petitioner for time that employees would spend locating those paper documents. The Access Officer’s emails, therefore, revealed the existence of a triable issue of fact as to whether and to what extent the County sought to impose fees associated with the time its employees would spend searching for paper documents (cf. Public Officers Law § 87 [1] [c] [iv]).
The Access Officer’s emails also indicate that some of the fees the County sought to impose for the “preparation” of documents may have been related to costs incurred in the course of creating entirely new records, or may have been imposed to compensate the County for extraordinary efforts needed to retrieve or extract records or data. For instance, the Access Officer’s emails make reference to at least one document that would “need to be created” and to the necessity of “creat[ing] a new enterprise.” As previously noted, FOIL does not “require any entity to prepare any record not possessed or maintained by such entity” (Public Officers Law § 89 [3] [a]; see Matter of Locator Servs. Group, Ltd. v Suffolk County Comptroller, 40 AD3d at 761), but merely requires an agency “to retrieve or extract a record or data maintained in a computer storage system” when it has the ability to do so “with reasonable effort” (Public Officers Law § 89 [3] [a]). Therefore, the Access Officer’s emails reveal the existence of a triable issue of fact as to whether the County has the ability to retrieve or extract the requested data “with reasonable effort” (id.), and whether some of the requests pertain to records which were not maintained by the County and to which the petitioner has no right of access under the provisions of FOIL (see Matter of Data Tree, LLC v Romaine, 9 NY3d at 466; Matter of New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d 153, 162 [2010]).
In sum, we conclude that the Supreme Court erred in summarily denying the petition, inasmuch as there are triable issues of fact as to whether the petitioner requested data or records that could be retrieved or extracted with reasonable effort, whether his requests required the creation of new records, and whether and to what extent the County sought to impose fees associated with the time its employees would spend searching for paper documents (see CPLR 7804 [h]; Matter of Data Tree, LLC v Romaine, 9 NY3d at 466; Matter of New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d at 162; see *1132 generally Matter of Willard v Meehan, 35 AD3d 488, 491 [2006]; Matter of Wamsley v East Ramapo Cent. School Dist. Bd. of Educ., 281 AD2d 633, 635 [2001]). Accordingly, we reverse the order and judgment insofar as appealed from, and remit this matter to the Supreme Court, Rockland County, for a trial forthwith (see CPLR 7804 [h]), at which the County will have the opportunity to satisfy its burden of proof with respect to these triable issues of fact, and a determination thereafter as to whether the fees charged by the County as a condition of disclosure were authorized by the cost provisions of FOIL (see CPLR 7803 [3]).
The petitioner’s remaining contentions are without merit. Skelos, J.P, Dickerson, Hall and Miller, JJ., concur.