Matter of Goldstein v Incorporated Vil. of Mamaroneck (2023 NY Slip Op 05500)

Matter of Goldstein v Incorporated Vil. of Mamaroneck

2023 NY Slip Op 05500

Decided on November 1, 2023

Appellate Division, Second Department

Iannacci, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 1, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ANGELA G. IANNACCI
LINDA CHRISTOPHER
HELEN VOUTSINAS, JJ.

2021-04760
 (Index No. 50599/21)

[*1]In the Matter of Cynthia Greer Goldstein, appellant,
v
Incorporated Village of Mamaroneck, et al., respondents.

APPEAL by the petitioner, in a proceeding pursuant to CPLR article 78 to compel disclosure of certain records pursuant to the Freedom of Information Law (Public Officers Law art 6) and for an award of attorneys' fees and litigation costs, from a judgment of the Supreme Court (Robert A. Neary, J.) entered June 11, 2021, in Westchester County. The judgment denied the petition and dismissed the proceeding.

Leventhal, Mullaney & Blinkoff, LLP, Roslyn, NY (Steven G. Leventhal of counsel), for appellant.
Abrams Fensterman, LLP, White Plains, NY (Robert A. Spolzino, Lisa Colosi Florio, and Mark Goreczny of counsel), for respondents.

IANNACCI, J.

OPINION & ORDER
The petitioner commenced this proceeding against the Incorporated Village of Mamaroneck, among others, to compel the Village to disclose records she requested under the Freedom of Information Law (Public Officers Law art 6; hereinafter FOIL) after the Village denied her request. The principal questions presented on appeal are whether the requested records were "reasonably described" (id. § 89[3][a]) so as to allow the Village to locate and identify them, and whether the Village satisfied its obligations under FOIL by maintaining a public website, on which much of the information sought by the petitioner could be found. We hold that the mere availability of government records on a public website is insufficient to satisfy a request under FOIL for reproduction of such materials. However, we further conclude that questions of fact exist as to the Village's ability to locate, identify, and produce the records requested by the petitioner, thereby precluding summary determination of the petition.
The record establishes the following facts. By letter dated August 25, 2020, addressed to Agostino A. Fusco, the Clerk-Treasurer of the Village, the petitioner, who was then a member of the Village Planning Board, made FOIL requests for certain materials pertaining to recusals and conflict-of-interest disclosures by members of a Village Commission and various Village Boards, including the Board of Trustees, Board of Ethics, and certain land use boards (hereinafter collectively the subject Boards). Specifically, the petitioner requested:
"All records including but not limited to letters, memos, email messages, phone messages, audio recordings, video recordings, text messages, social media postings, and transcripts reflecting"
1. the recusal pursuant to Code of the Village of Mamaroneck § 21-4(C)(1),
2. "any request, recommendation, demand or direction" to recuse pursuant to Code of the Village of Mamaroneck § 21-4(C)(1), or
3. a disclosure made pursuant to Code of the Village of Mamaroneck § 21-4(C)(2) or (N),
by or regarding any member of the subject Boards during the period January 1, 2015, to the present [FN1]. The petitioner asked that the Village provide electronic copies of the records via email, or alternatively, that the Village download electronically stored files onto a "CD."
On September 16, 2020, Village Deputy Clerk Sally Roberts sent an email to unidentified recipients (presumably members of the subject Boards), forwarding the FOIL requests and asking that they advise her if they had ever recused themselves, been asked to recuse themselves, or disclosed information while sitting on one of the subject Boards. Roberts sent another email on November 3, 2020, asking for any further replies, as she was "completing this request."
On December 10, 2020, Roberts advised the petitioner's counsel by email that the Village did not "file [its] records in a way that can be searched for recusals, direction to recuse or disclosures made by the Board of Trustees, Board of Ethics and Land Use Boards." However, Roberts explained that she had contacted members of the subject Boards to request that they send her any relevant records, and that the records were being compiled and would be provided on or before December 18, 2020.
On December 18, 2020, the petitioner's counsel received letters from Fusco denying the FOIL requests on the basis that "the Village does not file records in this way and to review all meetings/minutes of the Board of Trustees and Land Use Boards for the last five years is a Herculean task." On December 28, 2020, the petitioner appealed this denial to Jerry Barberio, the Village Manager and Records Access Appeals Officer. The petitioner's attorney consented to an extension of time until January 15, 2021, for the Village to reply to the appeal, but a reply was not made by that date.
On January 18, 2021, the petitioner commenced the instant proceeding against the Village, and Fusco and Barberio in their official capacities, to compel disclosure of the requested records, and for an award of attorneys' fees and litigation costs. The petitioner asserted that the Village had not made reasonable efforts to produce the requested records despite (1) Fusco's indication that she would provide to the petitioner the replies she received from members of the subject Boards for information regarding their recusals and disclosures, and (2) the availability of electronically searchable meeting minutes reflecting recusals by members of the subject Boards.
On January 22, 2021, the petitioner's counsel submitted a supplemental affirmation in support of the petition, indicating that he had received a letter response to the appeal on that date, and attaching the letter. In the letter, the Village's Assistant Records Access Appeals Officer explained that the Village had denied the FOIL requests on the basis that it did not "file records related to recusals in a central file," such that the FOIL requests would "require the Village to engage in the herculean task of reviewing all of its Board of Trustees and Land Use Board minutes for the past five (5) years." The Assistant Records Access Appeals Officer advised that he agreed with the denial of the FOIL requests on this basis.
In opposition to the petition, the respondents submitted affidavits of Roberts and Fusco. Fusco asserted in his affidavit that agendas and minutes of public meetings were available on the Village's website "and were capable of being searched by anyone, without the necessity of a FOIL request." Otherwise, according to Fusco, "the vast bulk of the records requested by the petitioner [were] not maintained in any manner that would allow the responsive documents to be identified in any manner that would be possible for the Village to undertake." Fusco averred that certain material was inaccessible or not searchable by subject matter, and "not every letter" that the Village received was "saved in a word-searchable electronic format."
Although Fusco acknowledged that emails could be searched electronically, he maintained that the search yielded results too numerous to feasibly review. To that point, Roberts averred that she conducted a search of all emails of members of the subject Boards for the terms [*2]"recus*" and "disclos*" for the period of January 1, 2015, through August 25, 2020. According to Roberts, this search yielded 52,150 results. For these reasons, the respondents maintained that the FOIL requests were properly denied in their entirety.
By judgment entered June 11, 2021, the Supreme Court denied the petition and dismissed the proceeding. The court opined that "[m]any of the items sought in the FOIL request [were] not records per se, but an open ended array of papers . . . which are not maintained as records and are not readily identifiable or retrievable." Thus, the court concluded, the respondents showed that "most of the descriptions in the FOIL request were insufficient for purposes of locating and identifying the documents sought." In other words, the court determined that the petitioner failed to "reasonably describe the documents so that they [could] be located." The petitioner appeals. We reverse and remit the matter to the Supreme Court for further proceedings on the petition.
The Legislature has declared that "government is the public's business" (Public Officers Law § 84). "[T]o promote [such] open government and public accountability, FOIL imposes a broad duty on government agencies to make their records available to the public" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 224; see Public Officers Law § 84). Indeed, "[a]ll records of a public agency are presumptively open to public inspection," and FOIL is to be liberally construed to achieve its purposes (Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488, 492; see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 225; Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 463). Concomitantly, "the burden of proof rests solely with the [agency] to justify the denial of access to the requested records" (Matter of Data Tree, LLC v Romaine, 9 NY3d at 463), and "[t]his burden must be met 'in more than just a plausible fashion'" (Matter of County of Suffolk v Long Is. Power Auth., 119 AD3d 940, 942, quoting Matter of Data Tree, LLC v Romaine, 9 NY3d at 462).
Public Officers Law § 89(3)(a) requires an agency, "within five business days of the receipt of a written request for a record reasonably described" (emphasis added) to either make the record available, deny the request in writing, or set forth the approximate date on which the request will be granted or denied. The term "record" is broadly defined to mean "any information kept, held, filed, produced or reproduced by, with or for an agency . . . in any physical form whatsoever" (id. § 86[4]). "When an agency has the ability to retrieve or extract a record or data maintained in a computer storage system with reasonable effort, it shall be required to do so" (id. § 89[3][a]; see Matter of Data Tree, LLC v Romaine, 9 NY3d at 464-465).
As an initial matter, "[w]hen an agency is unable to locate documents properly requested under FOIL, Public Officers Law § 89(3) requires the agency to 'certify that it does not have possession of [a requested] record or that such record cannot be found after diligent search'" (Matter of Rattley v New York City Police Dept., 96 NY2d 873, 875; see Public Officers Law § 89[3][a]; 21 NYCRR 1401.2[b][7]). Here, the petitioner requested a number of different types of records, including phone messages, text messages, and social media postings. Fusco's affidavit suggested that some of the types of records requested were not accessible. While "[n]either a detailed description of the search nor a personal statement from the person who actually conducted the search is required" to meet the certification requirement (Matter of Rattley v New York City Police Dept., 96 NY2d at 875), Fusco's vague affidavit, employing imprecise terminology, such as "the vast bulk of the records requested," was insufficient to qualify as a proper certification of unavailability of any particular type of record (cf. Matter of Cocchiaraley v Westchester County Health Care Corp., 209 AD3d 1018, 1018-1019; Matter of Curry v Nassau County Sheriff's Dept., 69 AD3d 622; Matter of Calvin K. of Oakknoll v De Francesco, 200 AD2d 619). Thus, the Supreme Court erred in determining, also imprecisely, that "[m]any of the items" the petitioner requested were not maintained as records. If there are certain types of records requested which are not maintained by the Village, proper certification that the Village is not in possession of the records includes precise identification of the records that are the subject of the certification (see Public Officers Law § 89[3][a]; 21 NYCRR 1401.2[b][7]).
The Supreme Court additionally erred in determining, as a matter of law, that the petitioner had failed to reasonably describe the records sought. "The failure of a requester to 'reasonably describe' desired records . . . is a ground for nondisclosure that is entirely separate from the exemption provisions" set forth in Public Officers Law § 87(2) (Matter of Konigsberg v Coughlin, 68 NY2d 245, 251). It is well settled that "demands under FOIL need not meet the stringent requirement under CPLR 3120 that documents be 'specifically designated'" (id. at 249, quoting Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 82). [*3]Requiring requested records to be "reasonably described," however, serves "to enable the agency to locate the records in question" (Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d 731, 732; see Matter of Konigsberg v Coughlin, 68 NY2d at 249). "In order for an agency to deny a FOIL request for overbreadth, the agency must demonstrate that the description is insufficient for [the] purposes of locating and identifying the documents sought" (Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d at 732 [internal quotation marks omitted]; see Matter of Konigsberg v Coughlin, 68 NY2d at 247-249 [the request by a prison inmate for all files or records "kept on (him) and (his) number of identification" was sufficiently described to allow the agency to locate and identify the requested documents]).
Case law and advisory opinions of the Committee on Open Government suggest that in determining whether a FOIL request has reasonably described the records sought, consideration can be given to "an agency's filing, indexing or records retrieval mechanisms" (Comm on Open Govt FOIL-AO-18748 [2011]; see Matter of Konigsberg v Coughlin, 68 NY2d at 250; Matter of Pflaum v Grattan, 116 AD3d 1103; Comm on Open Govt FOIL-AO-18863 [2012]; see also 21 NYCRR 1401.2[b][2])[FN2]. Thus, under certain circumstances, it has been held that an agency had a valid basis for denying a FOIL request for paper records "when they [were] not indexed in a manner that would enable the identification and location of documents" (Matter of Reclaim the Records v New York State Dept. of Health, 185 AD3d 1268, 1272 [internal quotation marks omitted]; see Matter of Pflaum v Grattan, 116 AD3d at 1104). It has been recognized, however, that the manner in which records are filed or indexed may not prevent an agency from locating and identifying records stored electronically, given the advent of electronic word search mechanisms (see Matter of Pflaum v Grattan, 116 AD3d 1103; Comm on Open Govt FOIL-AO-18863 [2012]). In such cases, "the agency must show 'that the descriptions provided are insufficient for purposes of extracting or retrieving the requested document[s] from the virtual files through an electronic word search . . . [by] name or other reasonable technological effort'" (Matter of Puig v New York State Police, 212 AD3d 1025, 1026, quoting Matter of Pflaum v Grattan, 116 AD3d at 1104; see Matter of Reclaim the Records v New York State Dept. of Health, 185 AD3d at 1269; Comm on Open Govt FOIL-AO-18863 [2012]).
Here, the petitioner requested records reflecting recusals, requests for recusals, and disclosures made under two specific provisions of the Code of the Village of Mamaroneck, as to members of certain identified public bodies, for a five-year period. The requests were not vague or unlimited. They were circumscribed as to subject matter, groups of individuals to whom they pertained, and time period (see Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d at 732; New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d 153, 154, 160-161; cf. Matter of Reclaim the Records v New York State Dept. of Health, 185 AD3d at 1270-1273 [request for any documentation or communications between any employees of the Department of Health and Ancestry.com was not "reasonably describe(d)" in light of the large number of employees working for the Department of Health, and the lack of any subject matter limitations for the requested records]; Matter of Asian Am. Legal Defense & Educ. Fund v New York City Police Dept., 125 AD3d 531, 531 [request for documents relating to "NYPD intelligence operations" concerning "any New York City businesses 'frequented' by Middle Eastern, South Asian, or Muslim persons" was insufficiently described for purposes of locating and identifying the documents sought]).
While the Village claimed that a keyword search of emails yielded more than 52,000 results, and thus, that the petitioner's description was overbroad, the keyword search Roberts performed was unreasonable. If not calculated to yield a massive number of results, the search was, at a minimum, not well designed, as it included the too-common term "disclose" and all of its forms. As to the petitioner's requests for records relating to recusals, for example, the search could have been limited to the term "recuse" (and its forms), which is far less common. As to the request for disclosures made pursuant to Code of the Village of Mamaroneck § 21-4(C)(2) or (N), the search might have included, for instance, the foregoing section numbers, a reference to the Village Code [*4]of Ethics, or some of the language from those code sections. By failing to perform a reasonable search, the Village failed to establish that "the descriptions provided [were] insufficient for purposes of extracting or retrieving the requested document from the virtual files through an electronic word search" (Matter of Pflaum v Grattan, 116 AD3d at 1104; see Matter of Puig v New York State Police, 212 AD3d at 1026). Moreover, there is no evidence that the Village attempted to perform an electronic word search of the minutes of the relevant Board meetings, which appears to be the most likely place the information requested by the petitioner would be found. Indeed, as to the request for disclosures pursuant to Code of the Village of Mamaroneck § 21-4(N), that provision requires such disclosures to be placed on "the official record of the Board of Trustees," at a public meeting.
The respondents further argue that "[t]he petitioner's FOIL request would have placed an unreasonable burden on the Village, which the Village is not obligated to undertake." In Matter of Konigsberg, the Court of Appeals made clear that where requested records were "reasonably described" in a FOIL demand, an agency could not "evade the broad disclosure provisions of that statute upon the naked allegation that the request [would] require review of thousands of records" (Matter of Konigsberg v Coughlin, 68 NY2d at 249 [citations omitted]; see Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d at 83).
In that vein, in 2008, the Legislature enacted amendments to FOIL to "recognize technology advances in the storage and collection of public records" (Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 223 at 9). Specifically, to "ensure that FOIL requests for public documents are complied with and that an agency cannot use the excuse that the FOIL request is voluminous, burdensome or it lacks the staff" (Assembly Mem in Support, Bill Jacket, L 2008, ch 223 at 11), the Legislature added the following provision to Public Officers Law § 89(3)(a):
"An agency shall not deny a request on the basis that the request is voluminous or that locating or reviewing the requested records or providing the requested copies is burdensome because the agency lacks sufficient staffing or on any other basis if the agency may engage an outside professional service to provide copying, programming or other services required to provide the copy."
A municipality "may recover the costs of engaging an outside service from the person or entity making such a request" (Matter of County of Suffolk v Long Is. Power Auth., 119 AD3d at 942; see Public Officers Law §§ 87[1][c][iii]; 89[3][a]; Matter of Weslowski v Vanderhoef, 98 AD3d at 1127). It may also, under certain circumstances, recover fees based upon "employee time needed to retrieve or extract records or data from electronic databases" (Matter of Weslowski v Vanderhoef, 98 AD3d at 1129; see Public Officers Law § 87[1][c][i], [iv]). An agency can condition disclosure upon the prepayment of such costs, as long as it can demonstrate that the fees to be imposed are authorized by the cost provisions of FOIL (see Matter of Weslowski v Vanderhoef, 98 AD3d at 1129).
Additionally, regulations enacted under FOIL by the Committee on Open Government provide that, upon receipt of a FOIL request, agency personnel are required to "assist persons seeking records to identify the records sought, if necessary, and when appropriate indicate the manner in which the records are filed, retrieved or generated to assist persons in reasonably describing records" (21 NYCRR 1401.2[b][2]). Agency personnel are also instructed to "contact persons seeking records when a request is voluminous or when locating the records sought involves substantial effort, so that agency personnel may ascertain the nature of records of primary interest and attempt to reasonably reduce the volume of the records requested" (id. § 1401.2[b][3]).
Here, there is no evidence that, before denying the petitioner's request in its entirety, the Village made any effort to work with her to more precisely define the information desired (see id. § 1401.2[b][2]), if possible, or to "attempt to reasonably reduce the volume of the records requested" (id. § 1401.2[b][3]). In opposition to the ensuing petition to compel disclosure of the records, the respondents offered sweeping but ultimately conclusory statements regarding the "Herculean" effort it would take to comply with the petitioner's request. While the Village initially advised the petitioner that records were not "filed" in a manner allowing it to search for recusals and disclosures pursuant to Code of the Village of Mamaroneck § 21-4(N), the respondents have since recognized the possibility of locating responsive records through use of electronic word search mechanisms. The evidence the respondents submitted, however, as to the Village's ability to use [*5]these tools did not sufficiently demonstrate the actual effort required to comply with the requests since the search Roberts performed was unreasonably broad, and, additionally, was only done for email correspondence and not minutes of public meetings. Moreover, no evidence was submitted regarding the costs of such endeavors, including the cost of employee time or of engaging an outside professional service, if necessary, and whether the petitioner would be willing to bear those costs [FN3] (see Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d at 733; Matter of County of Suffolk v Long Is. Power Auth., 119 AD3d at 942-943; see also Matter of Puig v New York State Police, 212 AD3d at 1027; Matter of New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d at 161-162).
Accordingly, questions of fact exist and must be resolved, including as to whether at least some of the requested records can be located, identified, and produced through use of electronic word search mechanisms and, potentially, engagement of an outside professional service.[FN4]
The respondents' final argument is that the Village satisfied its obligations under FOIL by maintaining a public website on which the minutes of meetings of the subject Boards, containing much of the information sought by the petitioner, were posted. In support of this contention, the respondents rely upon the "plain language of the statute," citing Public Officers Law § 87(2). That statute provides: "Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except those records . . . that may be withheld pursuant to the exceptions of rights of access appearing in this subdivision" (id. [emphasis added]). The statute then sets out the enumerated FOIL exceptions. The respondents appear to interpret the above-emphasized language of this provision to mean that an agency fully satisfies its obligations under FOIL where material is made accessible to the public. However, we do not find that meaning to be "plain." Section 87(2) sets forth the statutory exemptions to FOIL. Thus the foregoing opening provision merely states the general rule of open access before reciting the exceptions to the rule.
Moreover, as this Court has held, FOIL "requires an agency to provide copies or reproductions of records" when requested (Matter of Baez v Brown, 124 AD3d 881, 883, citing Public Officers Law § 87[1][b]; see Public Officers Law § 87[5][a]). Indeed, one of the 2008 amendments to FOIL added a provision requiring the public agency "[to] provide records on the medium requested" by the person submitting the FOIL request (Public Officers Law § 87[5][a]; see Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 223 at 9 ["This legislation makes . . . clear that public agencies should provide the type of copies the public requests when it can reasonably do so"]). Directing a member of the public to a website when, as here, a request has been made for reproduction of records in a certain format would not satisfy these statutory requirements (see Matter of Baez v Brown, 124 AD3d at 883-884). Indeed, the applicable regulations expressly provide: "When an agency maintains requested records on the internet, a response shall inform a requester that the records are accessible via the internet and in printed form either on paper or other information storage medium" (21 NYCRR 1401.5[b] [emphasis added]).
The respondents also rely upon an advisory opinion issued by the Committee on Open Government (see Comm on Open Govt FOIL-AO-15884 [2006]). The opinion was addressed to the [*6]question of whether FOIL prevented a county from charging an access fee for online viewing of Public Land Records (see id.). The Executive Director of the Committee concluded that the charge was permissible, reasoning:
"[T]he fee does not involve the reproduction of records, but rather a service provided by the County in which the public is offered online access to records. From my perspective, there is nothing in the Freedom of Information Law that requires agencies to make records available online via the internet. When they choose to do so, they would be acting above and beyond the responsibilities imposed upon them by law, and in those cases, the provisions in the Freedom of Information Law pertaining to fees, in my view, do not apply" (id. [emphasis added]; see Comm on Open Govt FOIL-AO-16470 [2007]).
Similarly, in an advisory opinion addressing whether agencies could charge "consumers electing to purchase a report via the [i]nternet" more than the fees permitted under FOIL, the Committee opined:
"[T]here is nothing in [FOIL] that requires that agencies post records on the internet. In most instances, agencies do so as a public service, due to public interest in a variety of matters, or for purposes of convenience . . . . When agencies choose to do so, I know of no law that precludes an agency from limiting access, i.e., to subscribers to such a service, or from charging a fee different from that envisioned by [FOIL]" (Comm on Open Govt FOIL-AO-16470 [2007]).
Contrary to the respondents' contention, the stated opinion that an agency acts "above and beyond the responsibilities imposed upon [it] by law" (Comm on Open Govt FOIL-AO-15884 [2006]) in posting records on a website simply does not stand for the proposition that an agency need not comply with a FOIL request if it posts information on its website, or that it complies by posting such information online and advising the requester to search its website. Indeed, the foregoing opinions that an agency may limit online access to subscribers and charge fees not permitted under FOIL arguably support the opposite conclusion and suggest that posting information online is something an agency does independent of its FOIL obligations.
The Court of Appeals' opinion in Matter of Data Tree, LLC v Romaine (9 NY3d 454) lends additional support to the proposition that making information available online is not sufficient to satisfy a FOIL request for production of that information in a specified format. The petitioner in that case submitted a FOIL request for public land records in "Tiff images" or images in the "electronic format" or "storage medium" regularly maintained or used by the respondent county (id. at 460 [internal quotation marks omitted]). The respondent county denied the request for various reasons, including that the records were available online and could be downloaded from public computers (see id.). The Supreme Court upheld that denial in the ensuing CPLR article 78 proceeding, on the basis that "many of the requested documents [were] available either by computer or in paper form at the Clerk's Office or on its Web site [sic]," and that the bulk of the remaining documents could not be transferred to electronic medium without creating a new record (Matter of Data Tree, LLC v Romaine, 9 NY3d at 460-461 [emphasis added]).
While there is no discussion in the Court of Appeals' opinion as to whether the Supreme Court properly or improperly relied upon the availability of certain documents on the respondent county's website, the Court of Appeals reversed the denial of the petition and remitted the matter to the Supreme Court for further proceedings on questions of fact as to whether the respondent county could produce the requested records by merely retrieving information it already maintained electronically or whether disclosure would require creation of a new record (see id. at 466). Had the online availability of certain records satisfied or obviated the respondent county's FOIL obligation at least as to those records, it would stand to reason that the Court of Appeals would have so indicated and, perhaps, affirmed the denial of the petition, in part.
Similarly supportive of the petitioner's position, in a decision regarding a petitioner's request for attorneys' fees under FOIL, which may be assessed against an agency when, inter alia, a FOIL requestor has "substantially prevailed" (Public Officers Law § 89[4][c]), the Appellate Division, Third Department, considered whether the petitioner had substantially prevailed despite [*7]the fact that the document it sought was already in the public domain prior to commencement of the proceeding (see Matter of Competitive Enter. Inst. v Attorney Gen. of N.Y., 161 AD3d 1283, 1285 [internal quotation marks omitted]). The Third Department concluded that the petitioner had substantially prevailed, despite the public availability of the document, reasoning that "there is no exception for public records per se" (id. at 1286).
Significantly, while the majority of people in this State may have access to a computer, a printer, and the internet, and to a lesser extent, the technological wherewithal to search for and obtain certain materials online, there are people who do not have the access or ability to obtain such materials for themselves. Yet FOIL, "enacted in furtherance of the public's vested and inherent 'right to know,' affords all citizens the means to obtain information concerning the day-to-day functioning of State and local government" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 565-566 [emphasis added and internal quotation marks omitted]). "[B]ecause FOIL has made full disclosure by public agencies a public right, the status or need of the person seeking access is generally of no consequence" (id. at 566-567). Holding that an agency satisfies a FOIL request for reproduction of records merely by referring the requestor to a public website does not adequately safeguard the public right of all of this State's citizens. Accordingly, we reject the respondents' contention that the Village was not obligated to produce the requested documents under FOIL in light of the publication of records on its website.[FN5]
In conclusion, we would emphasize that "[m]eeting the public's legitimate right of access to information concerning government is fulfillment of a governmental obligation, not the gift of, or waste of, public funds" (Matter of Doolan v Board of Coop. Educ. Servs., 2d Supervisory Dist. of Suffolk County, 48 NY2d 341, 347). As aptly observed by the Committee on Open Government, "giving effect to the Freedom of Information Law is not an extra task that government officials are required to carry out; rather, doing so is part of [their] governmental duty" (Comm on Open Govt FOIL-AO-18748 [2011]).
Accordingly, the Supreme Court should not have denied the petition and dismissed the proceeding. Further, "[s]ince the petition remains undetermined, the petitioner's request for an award of attorney's fees and litigation costs is premature" (Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d at 733; see Matter of Law Offs. of Cory H. Morris v Suffolk County, 216 AD3d 638, 641).
In light of our determination, the judgment is reversed, on the law, the petition is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith, including additional submissions by the parties, and a new determination of the petition thereafter.
DUFFY, J.P., CHRISTOPHER and VOUTSINAS, JJ., concur.
ORDERED that the judgment is reversed, on the law, with costs, the petition is reinstated, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith, including additional submissions by the parties, and a new determination of the petition thereafter.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court

Footnotes

Footnote 1: Generally, Code of the Village of Mamaroneck § 21-4(C)(2) requires Village officers, employees, and Board and committee members to recuse themselves "on the record and/or in writing" where they have a conflict of interest or to avoid the appearance of impropriety. Code of the Village of Mamaroneck § 21-4(N) requires that, in certain circumstances, Village officers, Board members, and employees disclose on "the official record of the Board of Trustees at a regular public meeting thereof" any direct or indirect interest in legislation or official action pending before the Village.

Footnote 2: While "the advisory opinions issued by the Committee on Open Government are not binding on the courts, [a]n agency's interpretation of the statutes it administers generally should be upheld if not unreasonable or irrational" (Matter of Weslowski v Vanderhoef, 98 AD3d 1123, 1130 [citation and internal quotation marks omitted]).

Footnote 3: While the petitioner additionally faulted the Village for not providing whatever information it might have compiled by emailing board members and asking for information as to their recusals and disclosures, "an agency responding to a FOIL request is not required to create any new record or data that is not already possessed and maintained by it as such" (Matter of Madden v Village of Tuxedo Park, 192 AD3d 802, 804; see Public Officers Law § 89[3][a]; Matter of Data Tree, LLC v Romaine, 9 NY3d at 464-465). Thus, while the Village might have endeavored to create such a new record, it is not obligated to provide any such newly created data to the petitioner.

Footnote 4: While the Village asserted that the requested records may contain personal or privileged information, in that instance, the Village must redact the records, when such can be done "without unreasonable difficulty" (Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45). In fact, the records sought by the petitioner here generally concerned information meant to be made public, and most likely to be found on the record of public meetings.

Footnote 5: To the extent the Appellate Division, First Department, reached a contrary conclusion in Matter of Reclaim the Records v City of New York (214 AD3d 489, 489-490), we decline to follow that decision.