PHILIP W. KOPPER, Respondent, *against* DAVID R. WILLIS, Appellant.

(Decided January 3d, 1881.)

The main business of the defendant consisted in the keeping of a restaurant on the lower floor of a building occupied by him, one-half only of the third floor of which was devoted to lodgers. The entire business was carried on under a license entitling him to sell spirituous liquors upon the premises, obtained by him from the board of commissioners of excise of the city of New York, upon an affidavit in which he alleged that he kept an inn, and that an inn was necessary for the accommodation of travelers in the place where he kept it (L. 1857, c. 628). The plaintiff entered the restaurant of the defendant for the purpose of dining, and noticing hooks around the room, intended for the coats of guests, hung up his overcoat on one of them. After finishing dinner he went to get his overcoat, but it was gone, and was never recovered by him, or by the defendant, whom he immediately notified of its loss; and he thereupon brought an action to recover from the defendant the value of the overcoat. *Held*, that the defendant by his own act and declaration had established the fact that he kept an inn, and hence his liability to a party who lost property in the inn while there in the character of a guest necessarily attached, no matter how slight the entertainment might be, nor how temporary the use made of it; and the character of the plaintiff as guest was not affected by the circumstance that a friend paid for the dinner.

Under the provision of the district court act of 1857, relating to extra costs in actions in district courts in the city of New York, that a party shall not be entitled to such extra costs "unless he has an attorney actually engaged in the prosecution or defense of the action," a plaintiff in such an action, who is an attorney at law, may recover extra costs although he himself conducts the prosecution of the case.

APPEAL from a judgment of the district court in the city of New York for the ninth judicial district.

The action was brought to recover from the defendant, as an innkeeper, the value of an overcoat belonging to the plaintiff, alleged to have been lost while in the defendant's restaurant. The facts are stated in the opinion. The justice in the district court found for the plaintiff for a sum exceeding $50, and thereupon allowed him $12 extra costs in addition to his disbursements (L. 1857, c. 334, § 70, p. 725). From the judgment the defendant appealed to this court.

*J. Homer Hildreth*, for appellant.

*Charles Blandy*, for respondent.

CHARLES P. DALY, Chief Justice.—The question, in this case, is, whether the relation of innkeeper and guest existed between the defendant and the plaintiff when the latter lost his coat in the defendant's establishment, which is a close and difficult one upon the facts, which are as follows:

The plaintiff, who is an attorney, was asked by another person, one Brewster, "to come out to dinner." They went to the defendant's establishment, where Brewster had been in the habit of going, but where the plaintiff had never been before. They went into the restaurant, which was considerably crowded with people at the time, where there were several tables, and where the plaintiff saw " all around the room, hooks, occupied almost entirely by coats of guests hung up." He and Brewster hung up their overcoats upon adjoining hooks, and then sat down at a large table in the center of the room, about eight or ten feet from the place where their coats hung, and had dinner, for which Brewster paid. When the plaintiff went to get his coat it was gone. He notified the defendant of the loss, and that he would hold him responsible. The defendant replied that it was very singular, that it was the first instance of any one having lost his overcoat since he had begun the establishment, which was about four months previously ; that he was very

sorry, and would use every effort to get it back, which he did by advertising it, and offering a reward for it, upon the advice of a detective.

The premises occupied by the defendant, where he kept a restaurant, and had rooms fitted up for the accommodation of guests, consisted of the first floor and basement, and the half of what was called the top floor of the building. It appears that about three weeks previously, the defendant applied for a license as an "inn, tavern or hotel-keeper," which application was accompanied by his affidavit, in which he set forth that he then kept an inn or tavern, at that place, 112 Grand street; that he had sufficient ability to keep one, and the necessary accommodation to entertain travelers at that place; that an inn or tavern was required there for the accommodation of travelers; that he kept in the house at least three spare beds, and the necessary bedding for the accommodation of travelers; that he had the necessary kitchen utensils to provide meals for and did provide meals for them on application; and that he had complied with the law to place on or adjacent to the house a sign indicating that he kept an inn or tavern; upon which application he received a license to sell spirituous liquors, ales, &c., &c.

A printed circular was offered in evidence by the defendant, in which his establishment was entitled "Merchants' Dining-Room and Café," and described as a place where gentlemen could find a first-class restaurant at which meals were served at reasonable prices, everything being cooked on the premises; that wines, liquors and cigars would be found on the sideboard, and that he superintended personally to see that his patrons were properly and quickly served; and that the dining-room and café was opened from 7 A. M. to 8 P. M. The defendant also offered in evidence two business cards, upon which his establishment was entitled "R. R. Willis' Restaurant, Wine and Sample-Room," all of which evidence the justice rejected.

The plaintiff testified, in answer to a question put in behalf of the defendant, that he did not give his coat in charge to the defendant, or to any of his attendants, which was not material,

as it has been settled, as long ago as *Cayles' Case*, 8 Co. 32, that it is not essential, upon the question of liability, that the guest should deliver his property into the custody of the innkeeper or his servants, or acquaint him with it; that it is sufficient that it is within the inn. The plaintiff also testified that he did not register his name in any book as a guest, or ask for any book in which to register it.

Justice McGown upon this state of facts gave judgment for the plaintiff, and in a carefully considered opinion drew attention to this material distinction, in respect to the defendant's liability as an innkeeper, that it did not appear that, on the third or top floor of the premises, where he had rooms fitted up for the accommodation of guests, he carried on the business of an innkeeper, independent of furnishing meals, &c., on the first floor; but, on the contrary, that the whole business was carried on under a license as an innkeeper, entitling him to sell spiritnous liquors, &c. In *Cromwell* v. *Stevens* (2 Daly, 15), I had occasion to examine what constitutes an innkeeper, not only by a review of the adjudged cases, in which that question has been considered, but by a historical inquiry into the origin and reason of the rule that innkeepers are responsible for the loss of the property of their guests; in which I came to the conclusion, from the authorities, that an inn is a house where all who conduct themselves properly, and who are able and ready to pay for their entertainment, are received, if there is accommodation for them, and who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied, at a reasonable charge, with their meals, lodging, refreshments and such services and attention as are necessarily incident to the use of the house as a temporary home. That a mere restaurant or eating-house is not an inn, nor a mere lodging-house, in which no provision is made for supplying the lodgers with meals; and that, in respect to houses for the entertainment of travelers, of which there are many in this and other cities, where the guest or traveler pays so much a day for his room, and takes his meals or not, as he thinks proper, in the restaurant, paying separately for each meal, as he takes it, they are to be considered inns, if

the restaurant forms part of the establishment and the whole house is kept under one general management for the reception of all guests or travelers that may come there.

The main business of the defendant, in this case, was un-doubtedly the keeping of a restaurant; and if nothing else had appeared but the fact that on the half of the third floor of the premises, he had rooms for lodgers, that incident would not, perhaps, in itself, have changed the character of the restaurant into an inn, subjecting him to the extraordinary liability im-posed by the common law upon innkeepers. In *Parkhurst* v. *Forster* (1 Salk. 387), Chief Justice HOLT held, that a man who kept a lodging-house and cooked meat for his lodgers at 4*d.* per joint, sold them small beer at 2*d.* per mug, and found them stable room and hay for their horses, at certain rates, was not an innkeeper, upon whom soldiers could be quartered, under a statute authorizing soldiers to be billeted upon inns; and in *Doe* d. *Pitt* v. *Laming* (4 Camp. 73), Lord ELLENBOROUGH held that a coffee-house, known in London as Grigsby's coffee-house, though people from the country lodged there as in an inn, was not an inn, within the meaning of a policy of insur-ance, which declared that the policy should be void if an inn was kept upon the premises, unless an increased premium was paid.

But the difficulty, in the present case, is, that the defendant himself has established, by his own act and declaration, that he keeps an inn, having obtained, upon an affidavit made by him for that purpose, a license to sell spirituous liquors upon the premises, which he could not have obtained unless upon proof by affidavit to the board of commissioners of excise that he kept an inn, and that an inn was necessary for the accommo-dation of travelers in the place where he kept it (Laws of 1857, c. 628).

The fact that the defendant kept an inn being established, the liability necessarily attaches in respect to all who come to his inn for the purpose of entertainment; whether it be to oc-cupy one of his rooms as a lodger, or to take a meal in the restaurant. It was suggested, in the opinion delivered in *Krohn* v. *Sweeny* (2 Daly, 202), that "it may well be, that a

person occupies a twofold character, viz. : That of a mere restaurant keeper, so far as relates to persons resorting to his refectory only for the purpose of taking their meals, while he is an innkeeper, with all the responsibilities attaching to such, as respects travelers who are received and accommodated by him, as guests, with lodgings in that portion of the building arranged as lodging places, for an uncertain price and under no express agreement."

This, however, was *obiter* in that case, and no such distinction, I apprehend, can be maintained consistently with adjudged cases, where there is no doubt of the fact that the defendant keeps an inn ; unless, as pointed out by the judge below, the one business is carried on separate and distinct from the other, in the same building, as was the case in *Carpenter* v. *Taylor* (1 Hilt. 195), but was not the case here, as appears by the facts already referred to, enumerated by the defendant in his affidavit, wherein he expressly states that it is *by reason of these facts* that he applies for a license to sell spirituous liquors ; or where it appears that the guest makes a specific contract with the innkeeper, as a regular boarder, at a fixed rate of compensation per week or otherwise (*Seward* v. *Seymour*, Anthon's Law Student, 521 ; Laws of 1860, c. 446).

Where it appears by the defendant's own showing that the establishment he keeps, is an inn, it is immaterial how slight may be the entertainment or how temporary the use made of it, if the party loses his property in the inn while there in the character of a guest. In *Bennett* v. *Mellor* (5 T. R. 273), the plaintiff's servant went to the defendant's inn and asked if he might leave the plaintiff's goods there until the next market day, and the innkeeper's wife told him that she could not tell, as they were very full of parcels; whereupon the servant sat. down in the inn, putting his master's goods immediately behind him on the floor, and had some liquor. When he got up, after sitting there a little while, the goods were missing, and upon this state of facts all the judges held that the innkeeper was liable. I have heretofore expressed a doubt whether the case was rightly determined, but it has been acquiesced in and acted upon for nearly a century, and if it is now to be disregarded,

that responsibility must be taken by the court of last resort. As the plaintiff in the present case went into the restaurant, which was a part of the defendant's establishment, to get his dinner, he was certainly there in the character of a guest, which is not affected by the circumstance that the friend who asked him to go there paid for the dinner. If it was an inn, the defendant was answerable for the loss of the coat whilst the plaintiff was taking his dinner, and as the judge below held that it was, I do not see how we can say that he erred, when the facts sworn to in the defendant's affidavit show that it was.

The justice erred in allowing the plaintiff $12 extra costs. In this respect the judgment will have to be modified, and without costs of appeal to either party, as the judgment is affirmed in part and modified in part.

The plaintiff afterwards moved for a re-argument as to the right to extra costs in the district court, which was granted; and upon a re-argument of that question the following opinion was rendered March 7th, 1881.

CHARLES P. DALY, Chief Justice.—Before passing upon the question raised it may be well to point out the nature of costs and why and for what purpose they are allowed; for in this case, as in many cases, there is much misunderstanding on the subject.

At the common law there were no costs to either party, but the practice grew up in the courts of allowing a compensation to be made for the expense which a plaintiff had been put to in carrying on his suit, and of assessing it as part of the damages so as to include it in the recovery. This was done by the justices in Eyre, and upon their discontinuance and the appointment of justices to go upon circuits in their stead, who had not the necessary time to assess costs, the statute of Gloucester (6 Edw. I. c. 1), was passed, allowing the plaintiff to recover costs where he recovered damages, as an increase of the damages; and by subsequent statutes (Marlbridge, c. 6; 23 Hen. VIII. c. 15), the defendant, if the plaintiff was defeated, was allowed to recover costs to be assessed in the discretion of the judge or judges of the court (Gilb. C. P. 266; 2 Inst. 288; Sayer on

Costs, 2, 3, 64, 65). Costs thereafter were considered in a legal sense as a part of the damages (*Phillip* v. *Bacon*, 9 East, 299 ; 2 Tidd's Practice, 945, 9 Lònd. ed.), and were regarded as awarded by way of indemnity for the actual and legitimate expenses the litigant was put to, and not as a punishment to the party who had to pay them, or as a bonus to the party who recovered them (Pulling on Attorneys, 264, 265, 3 ed. ; *Herold* v. *Smith*, 29 Law J. Exch. N. S. 141). Coke, in interpreting the statute of Gloucester, says that costs in law are so coupled together that they are accounted parcel of the damages, and further, that what is meant by the statute is all the legal costs of the suit, "but not the cost and expense of the plaintiff's travel or loss of time" (2 Inst. 288), showing that costs are given to a party for the expense he was put to in paying the fees of officers, amongst which were the fees of his attorney, who was an officer of the court ; and under the statute of 2 Geo. II. c. 23, par. 23, the fees of the attorney, before he could recover them from the party, had to be taxed and settled by the proper officer of the court. It has been held that a party who is not an attorney conducting a suit or a defense in person is not entitled to costs (*Stewart* v. *New York Common Pleas*, 10 Wend. 597 ; *Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch. 46), though he will be allowed the necessary disbursements made by him in the prosecution or defense of the suit (*People* v. *Steuben Common Pleas*, 12 Wend. 200).

There is no authority, and never has been, for giving a party costs for conducting or defending his suit in person, but they have always been given to him for the expense he was necessarily put to in the payment of the fees of the officers of the court, including those of his attorney, which fees were formerly all regulated and specifically fixed, the attorney's as well as others, by what was then known, both here and in England, as the fee bill.

The Code abolished the fee bill, leaving the attorney's compensation to the agreement of the parties, express or implied, and allowed the prevailing party to recover certain fixed sums as costs. But it has not changed the nature of costs, which are now, what they always have been, a compensation for the ex-

pense incurred or paid out by a party in the prosecution or defense of the suit. They are in the nature of damages incurred, and if the party is put to no expense in the employment of an attorney, but prosecutes or defends his suit in person, which he may do, he has not, upon the authority of the case cited (*Stewart* v. *New York Common Pleas*, 10 Wend. 597), any right to costs for his own services; and there is nothing in the Code that has changed the law in this respect. In the case of *Crommeline* v. *Dinsmore*, decided by Judge McAdam (Daily Register, October 18, 1878), to which we are referred, it was held that the prevailing party prosecuting the suit in person, if he is an attorney, can recover costs—a decision that is not in conflict with *Stewart* v. *New York Common Pleas* (*supra*), for what was said by the court there was that " a party not an attorney conducting a suit or defense in person is not entitled to costs."

But the present case was in a district court, and in respect to district courts there is a special statutory enactment upon the subject. The act of 1857, re-organizing these courts, provides (section 70), that " neither party shall recover extra costs unless he has an attorney actually engaged in the prosecution or defense of the action " (L. 1857, 725, 726). The plaintiff, who is an attorney, conducted the action himself. I think, upon a fair construction of the meaning and intent of this act, that he had an attorney engaged in the prosecution of the action, although the attorney was himself. The act is not any stronger than the general rule established by the decision of the courts, which is stated as follows by Pulling in his work on Attorneys (p. 364, 3 Lond. ed.): " The allowance of costs being by way of indemnity, the expenses claimed must have been actually incurred. A litigant who dispenses with professional services or assistance is under ordinary circumstances only entitled to his costs actually out of pocket, and not generally to remuneration for his own services;" but he states as an established exception to this rule, upon the authority of *Ferris* v. *Dewes* (4 Dowl. Pr.), *Parsloe* v. *Foye* (2 Dowl. Pr. 181) and *Leaver* v. *Whalley* (Id. 80), the case of an attorney or solicitor acting in his own behalf. The reason, I apprehend, for this distinction is that

the party, being an attorney, gives the professional time, knowledge and experience in the conducting or defense of his suit, which he would otherwise have to pay an attorney for rendering. It can make no difference to the defeated party, who is by law bound to pay the costs of the attorney of the prevailing party, or a fixed equivalent under the Code for it, whether that attorney is the prevailing party himself or another attorney employed by him. The plaintiff, like any other professional man, is paid for his time and services, and if he renders them in the management and trial of his own cause it may amount to as much pecuniary loss or damage to him as if he paid another attorney for doing it.

I think, therefore, that the justice was right in holding that, being an attorney, he was entitled to the costs given to him, and that the judgment as rendered by the justice, for the damages given, and costs, should be affirmed.

J. F. Daly and Van Hoesen, JJ., concurred.

Judgment affirmed.