Matter of New York Times Co. v City of New York Off. of the Mayor (2021 NY Slip Op 01948)





Matter of New York Times Co. v City of New York Off. of the Mayor


2021 NY Slip Op 01948


Decided on March 30, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 30, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta
Dianne T. Renwick, Anil C. Singh, Manuel Mendez


Index No. 158472/19 Appeal No. 13206 Case No. 2020-01491 

[*1]In the Matter of The New York Times Company, Petitioner-Respondent,
v
The City of New York Office of the Mayor, Respondent-Appellant.



Petitioner appeals from the judgment of the Supreme Court, New York County (Carol R. Edmead, J.), entered February 11, 2020, directing respondent to disclose all records sought in petitioner's request pursuant to the Freedom of Information Law (FOIL) and granting petitioner's request for attorneys' fees.




James E. Johnson, Corporation Counsel, New York (Mackenzie Fillow and Richard Dearing of counsel), for appellant.
The New York Times Company, Legal Department, New York (Al-Amyn Sumar, David E. McCraw, and Alexandra Settelmayer of counsel), for respondent.



Acosta, P.J. 


At issue in this appeal is whether a "private" warning letter issued to the Mayor of the City of New York by the Conflicts of Interest Board (Board) is subject to disclosure pursuant to the Freedom of Information Law (FOIL). The City of New York office of the Mayor (Mayor's Office) declined to disclose the letter to the New York Times (NYT) on the ground that the letter was exempt pursuant to New York City Charter § 2603(k), which states that "the records, reports, memoranda and files of the board shall be confidential and shall not be subject to public scrutiny." The Mayor's Office argues that since the letter was designated as "private" by the Board, and therefore confidential, it falls within the ambit of § 2603(k). We disagree. As the plain text of section 2603(k) indicates, it is meant to protect the confidentiality of documents in possession of the Board. Once the letter was issued to another entity, the Mayor could not rely on section 2603(k), because the NYT sought disclosure from the Mayor and not from the Board (see Matter of Newsday, Inc. v Empire State Dev. Corp. (98 NY2d 359, 362-363 [2002]). The Mayor's Office's privacy arguments are also inconsistent with the public interest in disclosure of warning letters, contrary to its own past practice of disclosing the Board's correspondence, and otherwise have no merit. Accordingly, the letter must be disclosed.
Background
To place the issue in this case properly in context, it is necessary to review the Board's function and the Campaign for One New York (CONY), the nonprofit organization at the heart of the dispute. The Conflicts of Interest Board The Conflicts of Interest Board is "the independent New York City agency tasked with administering, enforcing and interpreting chapter 68 of the New York City Charter," which codifies the City's conflicts of interest law (NYC Conflicts of Interest Board, About COIB, https://on.nyc.gov/2xOVSdt, last accessed March 22, 2021). New York City Charter § 2603(a) directs the Board to issue rules that "provid[e] clear guidance regarding prohibited conduct," furnish advisory opinions to public servants upon request, and receive and dispose of complaints of violations of chapter 68. When the Board receives a complaint, it can: (i) dismiss the complaint, "if it determines that no further action is required"; (ii) refer the complaint to the Commissioner of the New York City Department [*2]of Investigation (DOI) for further investigation, if warranted; (iii) make an initial determination of probable cause that a public servant has violated the law; or (iv) refer the alleged violation to the head of the public servant's agency, if the violation is minor or if related disciplinary charges are already pending (Charter § 2603[e]).
Chapter 68 also contains specific prohibitions on public servants' conduct and ownership interests in firms with business before City agencies. Significantly, the Charter's broad catchall provision for improper conduct states that "[n]o public servant shall engage in any business, transaction or private employment, or have any financial or other private interest, direct or indirect, which is in conflict with the proper discharge of his or her official duties" (Charter § 2604[b][2]). However, the Board may not impose penalties for violations of that provision "unless such violation involved conduct identified by rule of the board as prohibited by such [provision]" (Charter § 2606[d]).
The Charter empowers the Board to impose a wide range of sanctions on public servants, including a fine, an order of restitution, and a recommendation of suspension or termination (Charter § 2606). Significantly, "private warning letters" are solely the creation of the Board. The Board issues private warning letters where the evidence is "insufficient to support an enforcement action," the evidence suggest that the violation is "minor," enforcement would be "based on a new or untested interpretation of the law," or a "significant disciplinary penalty" has already been imposed (see COIB, Enforcement, Private Resolutions, https://on.nyc.gov/3395LBm, last accessed March 22, 2021). According to the Board, the private warning letters "include no findings of fact or violation, but instead serve as a formal reminder of the importance of strict compliance with the conflicts of interest law" (COIB, Annual Report 2018 at 21, https://on.nyc.gov/2NJq7df, last accessed March 22, 2021). Because these letters are the Board's own invention, nothing in the Charter or any other law specifically addresses whether they are confidential.
Two provisions of Chapter 68 mandate that certain records be kept confidential. The first, § 2603(f), provides for the confidentiality of investigative reports submitted to the Board by DOI. The second, § 2603(k), deals with documents possessed by the Board, and states, "[e]xcept as otherwise provided in this chapter, the records, reports, memoranda and files of the board shall be confidential and shall not be subject to public scrutiny." The Campaign for One New York The Campaign for One New York, a nonprofit organization, was founded in 2013 as a vehicle for supporting the Mayor's policy initiatives. CONY "pa[id] for numerous consultants who advised City Hall on political strategy, communications, and messaging related to a wide variety of issues facing the Mayor" (New York City Department of Investigation, Closing [*3]Memorandum, October 22, 2018 [record on appeal at 51—52]). After raising approximately $4 million, CONY disbanded in 2016 (id. at 51).
In 2016, the DOI opened an investigation into the Mayor and CONY. Two years later, it set out its findings in a closing memorandum stating, as relevant here, that the Mayor had violated Charter § 2604(b)(2) (the catchall provision) and two advisory opinions issued by the Board by soliciting contributions on behalf of CONY "from any individual who had, or whose organization had, a matter pending or about to be pending before any executive branch of the City" (internal quotation marks omitted)(record on appeal at 50, 64). The advisory opinions state that an elected official is permitted to solicit contributions for a nonprofit that supports the official's mission, provided that:
"(1) the solicitations contain an express statement that a decision whether or
not to give will not result in official favor or disfavor, and (2) the official
does not solicit any person or firm with a matter pending or about to be
pending before the official where it is within his legal authority or duties to
make, affect, or direct the outcome of the matter" (Closing Memorandum [record on appeal at 53]).
DOI found that the Mayor's Office solicited contributions for CONY from executives of real estate development firms that likely had or potentially had business pending before the City. Although there was no finding of any quid pro quo, on several occasions, a firm achieved a favorable outcome from a City agency after it had made a donation to CONY (Closing Memorandum at [record at 57-58). These findings were transmitted to the Board, whose Chairman declined "for confidentiality reasons," to tell a reporter whether the Board had issued a private warning letter, the only action available (see William Neuman, Ethics Cloud Hangs Over de Blasio as He Weighs Presidential Run, New York Times, May 7, 2019, https://nyti.ms/2Vl5fzR, last accessed March 22, 2021). Instant Litigation
The NYT reporter to whom the Board chairman had spoken then filed a FOIL request with the Mayor's Office for "a copy of a letter" sent by the Board to the Mayor's Office regarding his fundraising for [CONY]." The request was denied on the ground that "the class of records you have requested would be exempt from disclosure pursuant to New York City Charter § 2603(k)."
Petitioner filed an administrative appeal from that decision to the Mayor's Office, arguing that section 2603(k) requires records in the Board's possession to remain confidential but "says nothing about the confidentiality of records that originate from the Board but are in the hands of another agency." Petitioner argued that the Mayor's Office's position was "belied by its own practice of publicly releasing guidance letters issued by the Board."
The Mayor's Office denied the administrative appeal, stating as follows:
"The [Board] has consistently considered and advised that documents related to proceedings [*4]that do not result in public dispositions are exempt from public disclosure. Such documents include any communications the [Board] sends to other government entities or public servants, regardless of which entity or public servant possesses the document.
. . .
"While the [Board] has the ability to issue public warning letters, it often chooses to issue private warning letters instead (which the [Board] defines as 'non-public and confidential'). The flexibility to choose between private and public warning letters comprises an essential element of the [Board]'s enforcement scheme, and reflects the [Board]'s stated belief that confidentiality is essential to a good local government ethics enforcement program" (footnote omitted).
Petitioner brought this article 78 proceeding, seeking disclosure of the letter and attorneys' fees and costs.
In its verified answer, the Mayor's Office stated that the Board occasionally sent a private warning letter to a public servant after learning of facts indicating that the public servant might have engaged in conduct implicating the conflicts of interest law, that such a letter might serve to inform the public servant of relevant laws and remind the public servant of the importance of complying with them, that such a letter did not reflect a finding of any impropriety, and hat there were circumstances in which the Board sent a private warning letter rather than taking disciplinary action (for example, if there was insufficient evidence or if any violation would seem to be minor).
Supreme Court granted the petition to the extent of ordering the Mayor's Office to disclose the letter sought in the FOIL request, and granting petitioner attorneys' fees. We now affirm. Analysis
"The Freedom of Information Law expresses this State's strong commitment to open government and public accountability and imposes a broad standard of disclosure upon the State and its agencies" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 565 [1986]). All documents in the possession of an agency are presumed to be open to the public under FOIL unless the agency can identify a specific statutory exemption (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]; see Matter of Johnson v New York City Police Dept., 257 AD2d 343, 346 [1st Dept 1999]). Courts construe FOIL exemptions narrowly, and the agency bears the burden of showing that the requested records "fall squarely within" a given exemption (Matter of Rauh v de Blasio, 161 AD3d 120, 125 [1st Dept 2018] quoting New York Comm. For Occupational Safety & Health v Bloomberg, 72 AD3d 153, 158 [1st Dept 2010]).
To determine whether section 2603(k) exempts disclosure of the letter in question, we start with the plain text of that exception (Matter of Kosmider v Whitney, 34 NY3d 48, 55 [2019]). We find no ambiguity in the phrase[*5]"records, reports, memoranda and files of the board shall be confidential and shall not be subject to public scrutiny" (emphasis added). Under a commonsense reading, the exemption extends confidentiality to records held by the Board in its own possession. It says nothing about documents, whether private or not, in the possession of another agency. Section 2603(k) provides confidentiality to the Board's own work product and files as it goes about its sensitive work of investigating and adjudicating ethics complaints. However, when those records are transmitted to other governmental agencies and are no longer in the sole possession of the Board, confidentiality under section 2603(k) ceases to apply to those records. Thus, they are subject to disclosure unless a FOIL exemption applies.
The Mayor's Office has not identified an applicable exemption. Instead, it asserts that section 2603(k) applies because the letter was labeled a "private" warning letter. However, that argument is inconsistent with the plain text of section 2603(k), which, as indicated above, only protects the confidentiality of documents in the Board's possession.
The Mayor's Office's position is also inconsistent with the broader context of chapter 68 of the Charter (see e.g., Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012] ["a statute must be construed as a whole, and . . . its various sections must be considered together and with reference to each other"] [internal quotation marks omitted]). The Charter is very clear when it extends confidentiality to records outside the Board's possession. For example, section 2603(f) designates the DOI Commissioner's reports to the Board as confidential.
Moreover, a document in the hands of one agency does not necessarily remain confidential when it passes into the hands of a second (see Matter of Newsday Inc., 98 NY2d 359). In Newsday, the petitioner sought to compel the Empire State Development Corporation (ESDC) "to release copies of subpoenas duces tecum in its possession, which had been served by the New York County District Attorney's office in the course of an investigation of ESDC" (id. at 361). The agency argued that insofar as the subpoenas were confidential in the hands of the court on whose behalf they were issued, they were also confidential in the hands of the recipient, ESDC. The Court rejected that argument:
"[H]ad the subpoenas remained in the exclusive possession of the court on whose behalf they were issued, they would have been immune from compulsory disclosure . . . because the judiciary is expressly excluded from agency status under FOIL . . . When they were served upon ESDC, a FOIL-defined agency, they were fully subject to FOIL disclosure in the absence of any showing by ESDC that some statutory exemption applies" (id. at 362-363).
The Mayor's Office's claim that the warning letter implicates privacy interests does not change the fact that § 2603(k), like the FOIL provisions at issue [*6]in Newsday, makes documents confidential based on their location rather than on their content or the impact of their disclosure.
To be sure, there is a privacy exemption, an exemption correctly not relied upon by the Mayor's Office on appeal. FOIL's personal privacy exemption is available to a public servant and his or her employing agency when disclosure of the information "would constitute an unwarranted invasion of personal privacy" (Public Officers Law § 87[2][b]). The analysis under this exemption entails a "balancing [of] the privacy interests at stake against the public interest in disclosure of the information" (Matter of Thomas v Condon, 128 AD3d 528, 530 [1st Dept 2015] [internal quotation marks omitted]). FOIL allows agencies and their employees to protect sensitive matters in which there is little or no public interest, like personal information or unsubstantiated allegations, from public disclosure (see e.g., Matter of Asian Am. Legal Defense & Educ. Fund v New York City Police Dept., 125 AD3d 531, 532 [1st Dept 2015] [finding that NYPD documents came within personal privacy exemption because of disclosure's likely impact on the "reputations or livelihoods" of persons or entities], lv denied 26 NY3d 919 [2016]).
In addition, the Mayor's Office's privacy claim is inconsistent with the public interest in disclosure of warning letters. Although the Board issues such letters upon finding insufficient evidence of a violation to support an enforcement action, it also issues warning letters when the violation is "minor," or an enforcement action would be "based on a new or untested interpretation of the law," or a "significant disciplinary penalty" has already been imposed on the public servant (COIB, Annual Report 2019 at 18, https://on.nyc.gov/3o5zHYK, last accessed March 22, 2021).
To adopt the Mayor's Office's interpretation of § 2603(k), would be to eliminate public scrutiny of the Board's use of warning letters for enforcing the conflicts of interest laws, no matter the facts and circumstances. That lack of transparency is simply irreconcilable with FOIL, a law that at its core was meant to "expose 'abuses on the part of government' and 'hold the governors accountable to the governed'" (Matter of Friedman v Rice, 30 NY3d 461, 475 [2017], quoting Matter of Fink v Lefkowitz, 47 N.Y.2d 567, 571 [1979]).
A third problem with the position of the Mayor's Office in this litigation is its inconsistency with its own past practice of publicly disclosing the Board's correspondence. For instance, it disclosed an informal advice letter to the Mayor from the Board in January 2014 about the Mayor's fundraising for CONY. That letter is not the kind that the Charter explicitly mandates for release, either in § 2604(e) or elsewhere. The Mayor's Office cannot say that its authority to release that correspondence was discretionary. Disclosure is either required or specifically prohibited. Attorneys' Fees
Since the NYT "substantially prevailed[*7]" in its article 78 petition and the Mayor's Office lacked a "reasonable basis" for denying access to the records, it is entitled to attorney's fees (Public Officers Law § 89[4][c][ii]). The legislature's amendment to the fees provision, which made a fees award mandatory rather than "precatory," was intended to give more teeth to the public's right of access under FOIL (see also Matter of Rauh, 161 AD3d at 126-127; see also Matter of Reiburn v New York City Dept. of Parks & Recreation, 171 AD3d 670, 671 [1st Dept 2019] [the purpose of the change was to "encourage compliance with FOIL and to minimize the burdens of cost and time from bringing a judicial proceeding"] quoting2017 NY Assembly Bill A2750).
In Rauh, this Court upheld a fees award against the Mayor's Office where it had no reasonable basis to withhold records related to the Mayor's involvement in CONY (161 AD3d at 127). In affirming the fees award, this Court noted that the records, which included correspondence between the Mayor and an outside consultant retained by CONY about the consultant's private clients, were "the types of communications that FOIL meant to make available to the public" and that the Mayor's Office's "attempts to withhold these communications [ran] counter to the public's interest in transparency and the ability to participate on important issues of municipal governance" (id.).
Accordingly, the judgment of the Supreme Court, New York County (Carol R. Edmead, J.), entered February 11, 2020, directing respondent to disclose all records sought in petitioner's request pursuant to the Freedom of Information Law (FOIL) and granting petitioner's request for attorneys' fees, should be affirmed, without costs. The appeal from the order of the same court and Justice, entered January 15, 2020, should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment Supreme Court, New York County (Carol R. Edmead, J.), entered February 11, 202, affirmed, without costs. The appeal from the order of the same court and Justice, entered January 15, 2020, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Acosta, P.J. all concur.
Acosta, P.J., Renwick, Singh, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 30, 2021