| **Matter of Legal Aid Socy. v New York City Health & Hosps.** |
|:---:|
| 2024 NY Slip Op 32820(U) |
| August 12, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 158745/2023 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. JOHN J. KELLEY**

*Justice*

| | |
|---|---|
| **PART** | **56M** |

-----------------------------------------------------------------------------------X

In the Matter of

THE LEGAL AID SOCIETY

                      Petitioner,

                 - v -

NEW YORK CITY HEALTH & HOSPITALS,

                    Respondent.

-----------------------------------------------------------------------------------X

**INDEX NO.**   158745/2023

**MOTION DATE**   07/12/2024

**MOTION SEQ. NO.**   001

**DECISION, ORDER, AND JUDGMENT**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20

were read on this motion to/for   ARTICLE 78 (BODY OR OFFICER)   .

In this CPLR article 78 proceeding, the petitioner seeks judicial review of the May 15, 2023 and June 18, 2023 determinations denying its administrative appeals from two New York City Health and Hospitals Corporation (NYC HHC) Records Access Officer's (RAO) decisions, dated April 25, 2023 and June 26, 2023, respectively, that had denied its request for agency records pursuant to the Freedom of Information Law (Public Officers Law § 84, *et seq*.; hereinafter FOIL).  The NYC HHC answers the petition, submits the administrative record, and opposes the relief sought by the petitioners.  The petition is granted to the extent that, on or before September 18, 2024, the NYC HHC shall conduct a further diligent search, and thereupon produce the documents responsive to the petitioner's requests for records setting forth policies defining the term "sick call closeout," its requests for records describing or setting forth the reasons why the NYC HHC generates sick call closeouts, and records from which the sick call nursing protocol provided by the NYC HCC to the petitioner on April 25, 2023 had been extracted.  The petition is otherwise denied, and the proceeding is otherwise dismissed.  On or

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**   Page 1 of 13
**Motion No.  001**

[* 1]

before September 30, 2024, the petitioner shall submit, to the court, an affirmation of attorney's services in support of its application for an award of attorneys' fees.

In its initial request, dated March 21, 2023, the petitioner, The Legal Aid Society, explained that one of its clients was an inmate under the custody of the New York City Department of Correction (DOC) and, thus, upon seeking medical attention, became a patient of the NYC HHS's Correctional Health Services (CHS). In the course of reviewing the medical records, the petitioner's staff had come across a notation employing the phrase "ALL-Sick Call Close Out." The petitioner further described that, in its client's medical records, CHS personnel had written the following notation: "Sick Call Closeout. Sick Call Closeout Reason: Not Produced. Not Produced Reason: Patient not produced for three scheduled sick call appointments. As per CHS policy, appointment will be closed out."

The petitioner thereupon submitted a FOIL request to the NYC HHC, seeking documents consisting of "all records describing what a 'sick call closeout' is; the reasons why CHS generates 'sick call closeout[s]'; and all statistics concerning the number of 'sick call closeouts' in each month of 2020, 2021, 2022, and 2023, broken down by Department of Correction facility." Concerned that the NYC HHC might deny access to those records on the ground that the requested records were "not reasonably described" within the meaning of Public Officers Law § 89(3)(a), the petitioner, quoting from 21 NYCRR 1401.2(b)(2), requested the NYC HHC to assist it in "'identify[ing] the records sought' and 'indicate . . . the manner in which the records are filed, retrieved or generated to assist . . . in reasonably describing records.'"

In an April 25, 2023 determination, the NYC HHC's RAO denied the petitioner's request, explaining that

> "NYC Health + Hospitals does not keep, hold, file, produce or reproduce sick call statistics. Providing such reports would require additional research, development, and programming for the creation of a new record, which is beyond the scope of what Public Officers Law 89(3)(a) requires. . . . Therefore, this portion of your request is denied."

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          Page 2 of 13
**Motion No.  001**

2 of 13

[* 2]

Although the NYC HHC did not expressly produce or identify records responsive to the remainder of the petitioner's request, which had sought production of all records defining a sick call closeout, and the reasons why CHS generated sick call closeouts, the RAO attached a further email page to her response, describing a sick call nursing protocol for inmate-patients, which read as follows:

"Patient Calls the Conference Line

"There is a nurse assigned to the line from 5am to noon. Patients can leave voicemails afterwards.

"Nurse Triages Patient – Documents phone encounter in CHER (EHR)

"HSA runs list at 9am

"Triage Nurse Reports to facility (after 10am)

"The nursing office runs the final list at 10am and distributes electronically to all facilities.

"Triage Nurse facilitates encounters via telehealth providers and with team at facility

"Patients not seen by nurse are left to be seen by facility providers

"Encounters are to be addressed on a daily basis with a disposition in CHER (EHR)

"Orders are to be closed in real time if the patient is either seen or presents in person to refuse.

"Patient with documentation as not produced Day 1> Day 2 > Day 3 – the order is closed out (see below)

"Patients with documentation reported to be refusing as per DOC Day 1 > Day 2 the order is closed out (see below)

"Sick Call Triage Supervisor and/or their designee reviews all open orders for sick call and will complete those that have appropriate documentation if not done so at the facility. If there is any clinical concern with closing the order out, the order will be routed to Telehealth MD/PA for review and/or the facility SMD."

At the bottom of the page, the RAO had reproduced an image of what appeared to be a sample "ALL-Sick Call Close Out" computer screen entry form, which included fields for the digital entry of an inmate-patient's name, date of birth, book and case number, New York State Inmate

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**           Page 3 of 13
  **Motion No.  001**

3 of 13

[* 3]

Identification (NYSID) number, facility, and housing area, as well as a field with a drop-down menu for "Sick Call Close Out Reason," and regular fields for the "Reason scheduled" for the appointment, and for "Refusal reported by (DOC Officer Name)" and DOC shield number.

The petitioner administratively appealed the denial to the NYC HHC's Records Access Appeals Officer (RAAO). In a May 15, 2023 determination, the RAAO denied the petitioner's appeal, concluding that records describing "what a sick call closeout is" were not "reasonably described," and that the request for those records was impermissibly vague because the request employed the word "all." The RAAO further held that the request for records setting forth the reasons why the CHS generated sick call closeouts was "not a request for records but is formulated as a request for an answer to a direct question, which FOIL does not cover." In addition, the RAAO wrote that the RAO correctly denied the petitioner's request for all statistics concerning the number of sick call closeouts in each month of 2020, 2021, 2022, and 2023, broken down by DOC facility, since the NYC HHC did not "keep, hold, file, produce or reproduce sick call statistics reports," and that the provision of such reports would require "additional research, development, and programming for the creation of a new record, which is beyond the scope of what Public Officers Law 89(3)(a) requires."

The petitioner submitted a separate, follow-up FOIL request on May 24, 2023, in which it requested that the NYC HHC produce "the complete document/record from which CHS' 'Sick Call Nursing Protocol,'" as emailed in the NYC HHC's April 25, 2023 determination, had been "extracted." Specifically, the petitioner explained that its request encompassed the following:

> "For example, if 'Sick Call Nursing Protocol' was extracted from a 100-page book or training manual, I request that you disclose the entire 100-page book or training manual as responsive to this request. If 'Sick Call Nursing Protocol' was one slide in a PowerPoint presentation, I ask that you disclose the entire PowerPoint Presentation as responsive to this request. If 'Sick Call Nursing Protocol' was an electronic file saved within an electronic folder, I ask that you disclose all files and records within that folder as responsive to this request. If 'Sick Call Nursing Protocol' was a paper file stored within a paper folder, I ask that you disclose all files and records within that paper folder as responsive to this request. This request includes records, files, and folders in which 'Sick Call

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**   **Page 4 of 13**
Motion No.  001

4 of 13

[* 4]

Nursing Protocol' is contained. It also includes records, files, and folders (both electronic and paper) from which 'Sick Call Nursing Protocol' was extracted in order to respond to my FOIL request on April 25."

As part of this request, the petitioner included a copy of the sick call nursing protocol email response and the screenshot of the NYC HHC "ALL-Sick Call Close Out" data entry portal that previously had been produced. As with its initial request, the petitioner reiterated that, if the NYC HHC deemed the second request to be one for records that were not "reasonably described," it must, pursuant to 21 NYCRR 1401.2(b)(2), assist the petitioner in identifying the records sought, and indicate the manner in which the records were filed, retrieved, or generated to assist the petitioner in reasonably describing those records.

In a determination dated June 26, 2023, the NYC HHC's RAO denied the petitioner's second request, explaining that,

> "the record provided to you within our [April 25,] 2023 response was a standalone document. The record includes both a screenshot from the part of the CHS electronic health record system where sick call closeouts are documented *and text created by CHS as an attempt to explain to you the steps followed by CHS when a patient fails to appear for a scheduled medical appointmen*t. Notwithstanding the fact that FOIL does not obligate an agency to create a new record in response to a FOIL request, *that text was created solely for the purposes of the response to you, and the record is not a part of a larger manual or any other document*. As such, there are no responsive records for your current request"

(emphasis added). On July 3, 2023, the petitioner administratively appealed the RAO's denial.

In a July 18, 2023 determination, the NYC HHC's RAAO denied the petitioner's administrative appeal, concluding that the RAO correctly found that the sick call nursing protocol attached to the April 25, 2023 response was, indeed, a standalone document that was not extracted from any larger document or computer file. The RAAO thus concluded that the NYC HHC had conducted a diligent search for agency records responsive to the petitioner's second FOIL request, and that the RAO appropriately had concluded that there were no such records in the agency's possession.

The petitioner commenced this proceeding on September 5, 2023.

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**      Page 5 of 13
**Motion No.  001**

5 of 13

"While the Legislature established a general policy of disclosure by enacting the Freedom of Information Law, it nevertheless recognized a legitimate need on the part of government to keep some matters confidential" (*Matter of Fink v Lefkowitz*, 47 NY2d 567, 571 [1979]).  When denying a FOIL request, a state or municipal agency must "state, in writing, the reason for the denial of access" (*Matter of West Harlem Bus. Group v Empire State Dev. Corp.*, 13 NY3d 882, 884 [2009]).  If the requesting party administratively appeals the denial, the agency's appeals officer must also provide written reasoning for upholding the denial (*see id.*).

> "[O]n the issue of whether a particular document is exempt from disclosure under the Freedom of Information Law, the oft-stated standard of review in CPLR article 78 proceedings, i.e., that the agency's determination will not be set aside unless arbitrary or capricious or without rational basis, is not applicable"

(*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 109 AD2d 92, 94 [3rd Dept. 1985], *affd* 67 NY2d 562 [1986]; *see Matter of Prall v New York City Dept. of Corrections*, 129 AD3d 734 [2d Dept 2015]; *Matter of New York Comm. for Occupational Safety & Health v Bloomberg*, 72 AD3d 153 [1st Dept 2010]).  Rather, upon judicial review of an agency's determination to deny a FOIL request, the court must assess whether "the requested material falls squarely within a FOIL exemption" and whether the agency, upon denying such access, "articulat[ed] a particularized and specific justification for denying access" (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d at 566).  In other words, the court may only review an agency's FOIL determination to ascertain whether the determination to invoke a particular statutory exemption was affected by an error of law (*see Matter of Abdur-Rashid v New York City Police Dept.*, 31 NY3d 217, 246 & n 2 [2018], *affg* 140 AD3d 419, 420-421 [1st Dept 2016]; *Matter of Asian Am. Legal Defense & Educ. Fund v New York City Police Dept.*, 125 AD3d 531, 531 [1st Dept 2015]; CPLR 7803[3]).

The court agrees with the petitioner that all of its requests reasonably described the agency records that it sought and that, hence, the NYC HHC improperly based its denial of the petitioner's request records on that ground.  Records containing specific written, promulgated

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          Page 6 of 13
**Motion No.  001**

6 of 13

policies that define the parameters of a "sick call closeout," and enumerate the reasons that the NYC HHC classified an inmate-patients' interactions with CHS as a "sick call closeout," are "reasonably described," and do not require the agency to produce each and every document or computer record that had been generated *each time* it entered data into the ALL-Sick Call Closeout data screen. The requests in this regard are limited to policy documents that specifically addressed the promulgation of the definition of a sick call closeout, and the enumeration of the particular types of instances in which the NYC HHC deemed inmate-patient interactions with the CHS to require a sick call closeout (*see Matter of Law Off. of Cyrus Joubin, Esq. v New York City Dept. of Corr.,* 2024 NY Slip Op 32165[U], *4, 2024 NY Misc LEXIS 2625, *6 [Sup Ct, N.Y. County, Jun. 26, 2024] [Kelley, J.] [granting CPLR article 78 petition that challenged a DOC denial of FOIL request seeking records articulating written policies that addressed the manner in which DOC officers and employees were obligated to prevent, respond to, and investigate inmate-on-inmate violence, and to investigate slip-and-fall accidents]; *Matter of Partnership for the Homeless v New York City Dept. of Educ*., 2019 NY Slip Op 33193[U], *15-16, 2019 NY Misc LEXIS 5813, *15 [Sup Ct, N.Y. County, Oct. 25, 2019] [granting so much of CPLR article 78 petition as challenged NYC Department of Education's denial of FOIL request seeking records articulating several policies, and concluding that DOE "offered no evidence to establish that the descriptions provided are insufficient for purposes of extracting or retrieving the requested document from the virtual files"]).

The court recognizes that FOIL does not "require any entity to prepare any record not possessed or maintained by such entity" (Public Officers Law § 89[3][a]; *see Matter of Locator Servs. Group, Ltd. v Suffolk County Comptroller*, 40 AD3d 760, 761 [2d Dept 2007]). Thus, FOIL does not obligate the NYC HHC to respond to what is, in effect, an interrogatory seeking the reasons why that agency classified certain inmate-patient encounters as sick call closeouts. The petitioner, however, did not frame its requests in that fashion. In this regard, the court rejects the NYC HHC's contention that the request for records elucidating or enumerating

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          **Page 7 of 13**
**Motion No.  001**

reasons for deeming an encounter to constitute a sick call closeout was one that merely asked for an answer to a request for information. The court notes that the computer program screenshot that the NYC HHC provided to the petitioner on April 25, 2023 depicted a field entitled "Sick Call Close Out Reason," with a drop-down menu that was not expanded to depict the choice of "reasons" that were available for entry by an NYC HHC employee. Presumably, if that drop-down menu had been clicked before the screenshot had been taken, it would have depicted the generally applicable reasons for classifying an encounter as a sick call closeout, and may also have provided an option for choosing a reason "other" than the enumerated reasons. Hence, a properly depicted screenshot of that data entry portal would constitute an agency record responsive to the petitioner's request for documents that either contained a policy definition of the term sick call closeout or the reasons for invoking that characterization.

Although FOIL did not obligate the NYC HHC to create a new document responsive to any implied request for substantive information that an applicant may have set forth in its request for agency records, and the NYC HHC asserted that it possessed no records that set forth the definition of or reasons for a sick call closeout, here, the NYC HHC did, in fact, create a new document that purportedly articulated information underlying the nursing protocol that would likely lead to the classification of a patient encounter as a sick call closeout. In response to the petitioner's second FOIL request, and in the papers that it submitted in opposition to the petition, it reiterated its contention that this new document was a "standalone" document that was not extracted from any larger record or computer file. Yet, in its administrative denials of the second request, neither NYC HHC's RAO, Vanita Yogeshwar, nor its RAAO and General Counsel, Andrea G. Cohen, identified the person from whom that information purportedly was obtained, and it is quite unlikely that either of them had personal knowledge of that protocol. Moreover, in the papers that it submitted in opposition to the petition, the NYC HHC neither identified any person with actual knowledge of that protocol, nor submitted an affidavit from the person who provided that information to Yogeshwar. Rather, it submitted only the affidavit of

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          Page 8 of 13
**Motion No.  001**

Glenia Sofia Trifonas, CHS's Senior Director of Health Information & Risk Management, who asserted that she had personally undertaken a search for responsive records, and claimed that the only responsive record was the very one that Yogeshwar either had created in response to the petitioner's initial request, or which had been drafted for her for that purpose.

The court concludes that it is implausible that the creation of the computer drop-down menu was not accompanied by a document explicitly directing the software programmer who created or installed the application to include certain items on that menu as reasons for characterizing a patient encounter as a sick call closeout. The court further concludes that it is implausible that NYC HHC had not generated any agency record prior to the creation of the written nursing protocol, provided by its RAO, that either defined the term "sick call closeout," or enumerated the reasons for classifying a inmate-patient's encounter with CHS staff as a sick call closeout. NYC HHC would have the court believe that these definitions and reasons were instituted unilaterally by some unidentified employee or employees at some time in the past, and communicated only orally to each and every health-care provider who was required to apply the definition, make that classification, and enter data, without written approval from any supervisor, despite the fact that the protocol required a DOC officer to report information to the CHS.

Hence, the NYC HHC is directed to provide the petitioner with a screenshot of the relevant data entry portal, with the drop-down menu referable to the field entitled "Sick Call Close Out Reason," in an open position, to conduct a new, diligent search for all other documents that, as a matter of agency policy, either define the term "sick call closeout" or enumerate the reasons for classifying, as a matter of agency policy, an inmate-patient's encounter with CHS staff as a sick call closeout, and to provide those records to the petitioner.

A respondent agency may discharge its duty pursuant to FOIL by properly certifying that it has produced all relevant records (21 NYCRR 1401.2[b][5]), and that additional "records of which the agency is a custodian cannot be found after diligent search" (21 NYCRR 1401.2[b][7] [ii]; *see* Public Officers Law § 89[3][a]; *Matter of Rattley v New York City Police Dept.*, 96 NY2d

873, 875 [2001]; *Matter of Yonamine v New York City Police Dept*., 121 AD3d 598, 598 [1st Dept 2014]). Where the agency has made such a certification, the petition will have been rendered academic (*see Matter of Tarantino v New York City Police Dept*., 136 AD3d 598, 599 [1st Dept 2016]; *Matter of Taylor v New York City Police Dept. FOIL Unit*, 25 AD3d 347, 347 [1st Dept 2006]; *Matter of Tellier v New York City Police Dept*., 267 AD2d 9, 10 [1st Dept 1999]). Moreover, a certification of a diligent search need not follow any specific form, nor need it include a statement of a person with personal knowledge of the search; rather, a statement in an attorney's affirmation is sufficient to support the certification (*see Matter of Rattley v New York City Police Dept*., 96 NY2d at 875; *Matter of Tarantino v New York City Police Dept*., 136 AD3d at 599; *Matter of Yonamine v New York City Police Dept*., 121 AD3d at 598).

With respect to the petitioner's request for records that set forth all statistics concerning the number of sick call closeouts in each month of 2020, 2021, 2022, and 2023, broken down by DOC facility, the NYC HHC has established that it simply does and did not create or possess any such statistical tables, graphs, or reports, and that it would be required to generate new documents in order to provide the petitioner with any statistical information. The court accepts the agency's certification that it conducted a search for such documents, and could not identify or locate any such records. Hence, the court must deny that branch of the petition that sought judicial review of the RAAO's denial of the petitioner's administrative appeal referable to that aspect of the initial FOIL request.

Pursuant to FOIL's fee-shifting provision, a court

> "shall assess, against such agency involved, reasonable attorney's fees and other litigation costs reasonably incurred by such person in any case under the provisions of this section in which such person has substantially prevailed and the court finds that the agency had no reasonable basis for denying access"

(Public Officers Law § 89[4][c][ii]). Prior to 2006, the law required that, for attorneys' fees to be awarded, the documents involved must be of clearly significant interest to the general public.

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**                    **Page 10 of 13**
**Motion No.  001**

10 of 13

Pursuant to L 2006, ch 492, the Legislature amended FOIL to remove that statutory requirement.

> "An award of an attorney's fee and costs pursuant to FOIL is particularly appropriate to promote the purpose of and policy behind FOIL. Specifically, in enacting FOIL, the legislature declared that 'government is the public's business' and expressly found that 'a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions"

(*Matter of South Shore Press, Inc. v Havemeyer*, 136 AD3d 929, 931 [2d Dept 2016]). Moreover, "[t]he attorneys' fees provision of FOIL was amended, effective December 13, 2017, to provide that the court 'shall' award counsel fees where the agency has no basis for denying access to the material sought" (*Matter of Reiburn v New York City Dept. of Parks & Recreation*, 171 AD3d 670, 671 [1st Dept 2019]; *see New York Times Co. v City of N.Y. Off. of Mayor*, 194 AD3d 157, 166 [1st Dept 2021] ["The legislature's [2017] amendment to the fees provision, which made a fees award mandatory rather than 'precatory,' was intended to give more teeth to the public's right of access under FOIL."]). As explained by the Court of Appeals, "[o]nly after a court finds that the statutory prerequisites have been satisfied may it exercise its discretion to award or decline attorneys' fees" (*Beechwood Restorative Care Ctr. v. Signor,* 5 NY3d 435, 441 [2005]). Where, as here, "it was the initiation of this proceeding which brought about the release of the documents" (*Matter of Powhida v City of Albany*, 147 AD2d 236, 239 [3d Dept 1989]), the petitioner is deemed to have "substantially prevailed" (*see Matter of Madeiros v New York State Educ. Dept*., 30 NY3d 67, 79 [2018]).

Where a contract or statute provides for the award of attorneys' fees to a prevailing party, a self-represented attorney or law firm may recover fees for "'the professional time, knowledge and experience . . . which he [,she, or it] would otherwise have to pay an attorney for rendering'" (*Board of Mgrs. of Foundry at Wash. Park Condominium v Foundry Dev. Co., Inc*., 142 AD3d 1124, 1126 [2d Dept 2016], quoting *Parker 72nd Assoc. v Isaacs*, 109 Misc 2d 57, 59 [Civ Ct, N.Y. County 1980], quoting *Kopper v Willis*, 9 Daly 460, 469 [1881]; *cf. Gray v*

**158745/2023 THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS** Page 11 of 13
Motion No. 001

11 of 13

*Richardson*, 251 AD2d 268, 268 [1st Dept 1998] [pro se attorney may recover attorney's fees since applicable Delaware statute permitted recovery of pro se attorney's fees]). Hence, the petitioner is entitled to an award of reasonable attorneys' fees incurred up to the time that the NYC HHC ultimately produces the subject records. The court notes that, where an attorney is a party to the action, he or she may not submit an affirmation as a vehicle for providing the court with the facts underlying the dispute. CPLR 2106 does not afford attorneys who are parties to an action this privilege (*see John Harris P.C. v Krauss*, 87 AD3d 469, 469 [1st Dept 2011]). "[T]o make a competent, admissible affirmation," an attorney who is a party "must first appear before a notary or other such official and formally declare the truth of the contents of the document" (*Doumanis v Conzo,* 265 AD2d 296, 296 [2d Dept 1999]). Consequently, on or before September 30, 2024, an attorney employed by the Legal Aid Society, which is the party petitioner herein, shall submit an affidavit setting forth the specifics of the time that attorneys employed by the Legal Aid Society expended in prosecuting this proceeding, after which the court shall determine the appropriate award of attorney's fees.

In light of the foregoing, it is,

ORDERED and ADJUDGED that the petition is granted to the extent that:

(a) so much of the respondent's May 15, 2023 determination as denied the petitioner's administrative appeal from the respondent's April 25, 2023 denial of the petitioner's request for records setting forth the respondent's policy defining the term "sick call closeout" and the reasons that the respondent, as a matter of policy, characterized an inmate-patient's encounter with the respondent's staff as a "sick call closeout," is vacated and annulled, and

(b) the respondent's July 18, 2023 determination, which denied the petitioner's administrative appeal from the respondent's June 26, 2023 denial of the petitioner's request for records from which the information set forth in the sick call nursing protocol attached to the respondent's April 25, 2023 denial had been extracted, is vacated and annulled; and it is further,

ORDERED and ADJUDGED that the petition is otherwise denied, and the proceeding is otherwise dismissed; and it is further,

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          **Page 12 of 13**
**Motion No.  001**

12 of 13

[* 12]

ORDERED that, on or before September 18, 2024, the respondent shall (1) produce and provide the petitioner with a screenshot of the relevant data entry portal that had been depicted in its April 25, 2023 written response to the petitioner, with the drop-down menu referable to the field entitled "Sick Call Close Out Reason," depicted in an open position, (2) conduct a new, diligent search for all other documents that, as a matter of agency policy, define the term "sick call closeout," enumerate the reasons for classifying, as a matter of agency policy, an inmate-patient's encounter with CHS staff as a sick call closeout, and constitute records from which the information set forth in the sick call nursing protocol attached to the respondent's April 25, 2023 denial had been extracted, and (3) provide those records to the petitioner; and it is further,

ORDERED that the branch of the petition seeking an award of attorney's fees is granted; and it is further,

ORDERED that, on or before September 30, 2024, the petitioner shall submit an affidavit of attorney's services from one of its attorneys setting forth the specifics of the time that the petitioner's attorneys expended in prosecuting this proceeding.

This constitutes the Decision, Order, and Judgment of the court.

| **8/12/2024** | | |
| --- | --- | --- |
| **DATE** | | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**158745/2023   THE LEGAL AID SOCIETY vs. NEW YORK CITY HEALTH & HOSPITALS**          Page 13 of 13
**Motion No.  001**

13 of 13

[* 13]